[Civ. No. 10093. Fourth Dist., Div. Two. Feb. 25, 1971.]

MARVIN B. KAPELUS, Plaintiff and Appellant, v.
UNITED TITLE GUARANTY COMPANY et al.,
Defendants and Appellants.

**650**

[black redaction bars]

## COUNSEL

Marvin B. Kapelus, in pro. per., and George Jeffries for Plaintiff and Appellant.

Robert F. Waldron for Defendants and Appellants.

## OPINION

**KERRIGAN, J.**—This is an action initiated by the plaintiff against three title insurance companies (United Title Guaranty Co., Western Title Guaranty Co. and Western Title Insurance Co., Inc.) to recover damages for failure to defend upon a policy of title insurance sold and issued to the plaintiff. This case was tried on two issues: (1) Whether defendants breached their duty to defend plaintiff under the terms of the aforesaid title insurance policy; and (2) damages. The trial court found that defendant Western Title Insurance Company[1] breached its duty to defend plaintiff in certain litigation affecting the title to the land referred to in the title policy and awarded plaintiff damages against the defendant in the sum of $14,388.15.

---

[1]While three defendants were designated in the first amended complaint, judgment was rendered against the defendant Western Title Insurance Company, Inc. only; henceforth, the parties will be referred to in the singular as "plaintiff" and "defendant."

Plaintiff appeals the judgment on the ground that the damage award is inadequate; he maintains that he is entitled to an award of $195,388.05. ■ Defendant filed a cross-appeal from the judgment, contending that plaintiff is not entitled to any recovery. However, the cross-appeal was filed one day late; timely filing of a notice of appeal or cross-appeal is jurisdictional. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 787 [59 Cal.Rptr. 141, 427 P.2d 805].)[2] Consequently, the cross-appeal must be dismissed.

Plaintiff is an attorney-at-law who has been engaged in practice since 1957. Prior to acquiring an interest in the property which spawned this litigation, he brought a lawsuit upon behalf of his client, Crenshaw Carpet Center, for an unpaid carpeting bill. After securing a judgment, a trust deed was given his client as security for the carpeting debt. This trust deed was exchanged for a trust deed on a parcel of property designated as Lot 8, Tract 3535, City of Anaheim, County of Orange. The subsequently-acquired trust deed was foreclosed. Plaintiff's client, Crenshaw Carpet Center, was the successful bidder at the trustee's sale, thereby acquiring fee title to Lot 8, Tract 3535.

On or about September 16, 1963, plaintiff and his client, Crenshaw Carpet Center, entered into an escrow at one of the defendants' offices with one Curtis W. Reedy, wherein it was agreed that Crenshaw Carpet Center would convey title to Lot 8 to Reedy. In exchange, Reedy agreed to convey a valuable piece of property [which will be referred to as the "Katella property" or "subject property"] in Orange County to plaintiff and Crenshaw Carpet. In turn, plaintiff and Crenshaw Carpet agreed in the escrow instructions to give Reedy an option to purchase the subject property back for $20,500, with the option being exercisable on or before the 16th day of January 1964.[3]

When the escrow officer noted the existence of the option, the parties to the escrow were advised that if an option was to be utilized, the defendant would deem the escrow to be a security transaction. Plaintiff informed the defendant that he did not want the exchange to be considered a security transaction, that he wanted insurance for the fee title to the Katella prop-

---

[2]Effective January 1, 1971, pursuant to a recent amendment of the Rules of Court, rule 3 now provides that when a timely notice of appeal is filed by a party, the other party may file a cross-appeal within the longer of the following periods: (1) The normal time otherwise prescribed for initiating the appeal, and (2) 20 days after the trial court clerk mails notice of the filing of the first appeal.

[3]There was some ambiguity in the option termination date, but the period of the option is unimportant insofar as this appeal is concerned.

erty, and that he intended to take fee title and would go into possession of the subject property. Defendant agreed to write a title policy insuring the fee title on condition that plaintiff and the other parties to the transaction sign a statement to the effect that the deed from Reedy to plaintiff and Crenshaw was an absolute conveyance and not a security device, pay an additional premium, and increase the face amount of the policy. Plaintiff, his client Crenshaw Carpet, and Reedy thereupon signed the requested statement for the purpose of inducing defendant to issue its title insurance policy to plaintiff and Crenshaw Carpet, which statement became a part of the escrow instructions. On October 10, 1963, the escrow closed and a title policy issued, with title to the subject property being conveyed to plaintiff and Crenshaw Carpet Center, each as to an undivided one-half interest. Under the terms of the title insurance policy, defendant Western agreed to defend the plaintiff and Crenshaw Carpet in all litigation concerning the title to the subject property.

On January 24, 1964, the aforesaid Curtis W. Reedy, J. J. Franklin, Leatrice Franklin and Florence Fitzgerald filed an action in the Orange County Superior Court against the plaintiff Kapelus and Crenshaw Carpet in which they charged that the deed from Reedy to Kapelus and Crenshaw did not convey a fee interest, as insured by defendant Western, because the document entitled "Option to Purchase Real Property" was a security instrument, to wit, a mortgage. They further alleged that Reedy was not the owner of fee title but was merely the undisclosed agent for J. J. Franklin, Leatrice Franklin, and Florence Fitzgerald. Defendant provided plaintiff with the defense of this action.

On August 26, 1964, J. J. Franklin, Leatrice Franklin and Florence Fitzgerald filed a Chapter XI bankruptcy proceeding. An order to show cause issued, restraining the Orange County Superior Court action. The bankruptcy petition contained essentially the same allegations as were alleged in the superior court complaint. The basis for attack on the plaintiff's title were the allegations that the deed from Reedy to plaintiff and Crenshaw Carpet Center, when construed with the option to purchase, constituted a security device and that neither plaintiff nor Crenshaw enjoyed legal title.

Except for two brief, minor appearances, defendant Western refused to undertake the defense of the bankruptcy court action in behalf of plaintiff and Crenshaw. Defendant further refused to assume the costs of such defense and withdrew from the proceedings, leaving the plaintiff to his own devices.

Plaintiff retained private counsel to represent him in the bankruptcy proceedings on a contingent fee basis.

The bankruptcy court made an order divesting plaintiff of fee title and decreeing that the deed from Reedy to plaintiff and Crenshaw Carpet Center was actually a mortgage, with legal title being vested in J. J. Franklin, Leatrice Franklin and Florence Fitzgerald; the bankruptcy court further ordered that plaintiff and Crenshaw Carpet were entitled to a lien on the Katella property to secure the obligation owing to them in the amount of $20,500 (the option price).

Plaintiff appealed the referee's decision to the U. S. Court of Appeals, which affirmed an order of the United States District Court affirming the referee in bankruptcy. Plaintiff then filed this action for damages.

The trial court herein computed its $14,388.15 award on the following basis: One-half of $20,500 (the option price) = $10,250; plaintiff's costs of suit in the bankruptcy proceedings and on appeal therefrom as follows: Reporter's costs, $1,586.50; printing costs, $387; costs taxed by Circuit Court of Appeals, $2,164.65, comprising the total sum of $4,138.15 costs. ($10,250 + $4,138.15 = $14,388.15.)

The trial court, in effect, found that the Katella property had a net value of $382,500; plaintiff therefore assumes that he had a one-half interest in an equity of $382,500, to wit, $191,250, to which should be added his costs of defense in the sum of $4,138.05, or a total loss of $195,388.05. Stated another way, plaintiff argues that the trial court's award of $14,388.15 damages is inconsistent with its finding that the equity value of the real property lost by him was in excess of $195,000.

■ Where an insurer agrees to defend the insured and defaults in such agreement, the insurance company is bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. (*Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263, 280 [54 Cal.Rptr. 104, 419 P.2d 168]; *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 37 [17 Cal. Rptr. 12, 366 P.2d 455].) ■ An insurer which wrongfully refuses to defend is liable for the judgment against the insured. (*Arenson* v. *Nat. Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 84 [286 P.2d 816]; Civ. Code, § 2778.) ■ An insurer's wrongful refusal to defend will automatically subject it to liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage. (See 14 U.C.L.A. L.Rev. 1328, 1331.) ■ An insurer who has refused to defend is bound not only by the judgment, but also as to all material findings of fact (see *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 561 [334 P.2d 881]) relating to the issue of coverage. (See *Hogan* v. *Midland National Ins. Co.*, 3 Cal.3d 553, 565 [91 Cal.Rptr. 153, 476 P.2d 825].)

Plaintiff maintains that inasmuch as he insisted upon insurance of the fee title and the defendant Western obligated itself to defend the plaintiff's fee title and breached its duty to defend, he is entitled to the fair market value of the fee. Plaintiff's argument assumes that he had absolute title. He did not. He merely held a naked, legal title which, in reality, was a disguised security device. He could have been divested of title by the exercise of the option.[4] The policy issued by Western expressly provided that the insurer's liability would not exceed the loss suffered by the insured.

The decision of the United States Court of Appeals affirming the bankruptcy referee's findings and order to the effect that the plaintiff's interest in the Katella real property was a security interest, as distinguished from a fee absolute, divested him of legal title and thereby established the value of the interest, or the actual loss sustained by plaintiff. The determination of the federal court is *res judicata* as to the indemnity to which plaintiff is entitled under the policy, exclusive of the damages sustained by failure to defend. The law is clear that Western Title is in a position to invoke the defense of *res judicata* even though it was not a party in the bankruptcy proceeding (see *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 811-813 [122 P.2d 892]; see also *Fairchild* v. *Bank of America,* 165 Cal.App.2d 477, 482-483 [332 P.2d 101]; *Garcia* v. *Garcia,* 148 Cal.App.2d 147, 155 [306 P.2d 80]), provided that the following three questions are affirmatively answered: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (*Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 813.)

In the case under review, the question of the nature and extent of the plaintiff's interest in the Katella property was resolved in the federal proceedings; a final judgment on the merits was entered therein; and plaintiff was an actual party in said action. Consequently, the doctrine applies. The decision of the United States Circuit Court of Appeals was before the trial court herein. Therefore, the evidence is conclusive that plaintiff merely had a security interest in the property. He received exactly what he was entitled to in the trial forum—the value of his security interest, plus the costs of suit incurred by him in defending his interest.

---

[4] There was a tender of $20,500 in an attempt to exercise the option, although it was refused on the grounds that certain conditions of the option [other than timeliness] had not been met.

The trial court acted with propriety in awarding plaintiff the sum of $14,388.15 in damages.

The judgment is affirmed; the purported cross-appeal is dismissed.

Tamura, Acting P. J., concurred.

Kaufman, J., deeming himself disqualified, did not participate in this opinion.

A petition for a rehearing was denied March 16, 1971, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied April 29, 1971.