EVERETT ASSOCIATES, INC., a California corporation, dba Living Earth Crafts, and Donald Payne, an individual, Plaintiffs,

v.

TRANSCONTINENTAL INSURANCE COMPANY, a New York corporation, and American National Fire Insurance Company, a New York corporation, Defendants.

No. C–97–4308 SC.

United States District Court, N.D. California.

March 7, 2001.

Daniel Lanahan, Thomas Konicek, Lanahan & Reilley, Santa Rosa, CA, for plaintiffs.

Chip Cox, Newton, Kastner & Remmel, Mountain View, CA, for defendants.

Charles Lynberg, Hellar Ann Hancock, Timothy Hix, Lynberg & Watkins, Los Angeles, CA, Hellar Ann Hancock, Michelman & Robinson, Encino, CA, for counterclaimants.

## *ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

CONTI, District Judge.

### I. *INTRODUCTION*

Plaintiffs Everett Associates, Inc. ("Everett") and Donald Payne ("Payne") bring the above-captioned action against Defendant insurance companies Transcontinental Insurance Company ("Transcontinental") and American National Fire Insurance Company ("American") for claims resulting from their refusal to defend and indemnify Plaintiff in an underlying patent infringement lawsuit.

In this third round of summary judgment motions, Defendants seek summary judgment on Plaintiffs' claims for (1) negligence; (2) negligent infliction of emotional distress; (3) emotional distress damages for breach of contract; (4) indemnification; and (5) recovery of the *Clark* settlement as damages for breach of contract.

### II. *BACKGROUND*

The underlying patent case, *Clark v. Living Earth Crafts*, No. 97–351 (C.D.Cal.1997) (the *"Clark* action"), involved a suit by Roland Clark against Everett, dba Living Earth Crafts, alleging that Everett advertised, offered to sell, manufactured, and sold portable massage tables that infringed a patent owned by Clark.[1] Everett tendered the defense of

---

1. Plaintiffs object to the inclusion of the *Clark* complaint via a declaration on the grounds that Defendant's counsel lacks personal knowledge of the complaint's authenticity, hearsay, and lack of request for judicial notice. The Court finds Plaintiffs' objections patently absurd. The *Clark* complaint was attached as Exhibit B to Plaintiffs' complaint, and thus is part of the pleadings. There is no implication that the proffered complaint is not a true and accurate copy. Finally, the *Clark* complaint is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ques-

this action to Defendant Transcontinental on May 14, 1997. (First Amended Complaint ("FAC"), Ex. D). Transcontinental issued a Commercial General Liability ("CGL") insurance policy (policy no. 56819374) to Everett covering the period from November 1, 1996 to November 1, 1998. Three times during 1997, Transcontinental denied a duty to defend or indemnify under the policy. (FAC, Ex. G, Ex. I, & Ex. K). On January 8, 1998, Clark amended the complaint to add Donald Payne, the owner and CEO of Everett as a defendant. (Cox Decl., Ex. C). Transcontinental received formal notice of the amendment adding Payne and tender of the claim against Payne on November 18, 1998. (Hancock Decl., Ex. F)

On June 9, 1998, Everett tendered the defense of the *Clark* action to American National Fire Insurance Company ("American"). (FAC, Ex. M). American had issued Everett a CGL policy (policy no. PAC8683340–01) covering from November 1, 1995 to November 1, 1996. On July 14, 1998, American denied a duty to defend or indemnify. (FAC, Ex. N) Everett and Payne eventually settled the Clark litigation on November 25, 1998 agreeing to pay Clark $25,000 for past infringement, $225,000 to cover Clark's attorney fees, and a $5.00 per unit royalty on future sales with an annual minimum payment of $26,500. (Cox. Decl., Ex. F, Confidential Settlement Agreement).

On November 26, 1997, Everett and Payne filed suit against Transcontinental and American. In the First Amended Complaint, Plaintiffs assert the following eight causes of action against each Defendant: (1) Declaratory Relief re: duty to defend (Claims One & Two); (2) Declaratory Relief re: duty to indemnify (Claims Three & Four); (3) Negligence (Claims Five & Six); (4) Breach of Contract re: failure to defend (Claims Seven & Eight); (5) Breach of Contract re: failure to indemnify (Claims Nine & Ten); (6) Breach of Duty of Good Faith and Fair Dealing (Claims Eleven & Twelve); (7) Negligent Infliction of Emotional Distress (Claims Thirteen & Fourteen); and (8) Intentional Infliction of Emotional Distress (Claims Fifteen & Sixteen).

On May 26, 1999, the Court found on summary judgment that Defendants breached their duty to defend. On May 22, 2000, the Court assessed damages equal to $380,809.52 in attorney fees from defending the *Clark* action and $10,733.11 in prejudgment interest for Defendants' failure to defend. The Court did not address whether Plaintiff was entitled to any additional damages, such as the *Clark* settlement and emotional distress. The Court also found on summary judgment that Defendants did not breach the implied covenant of good faith and fair dealing. The Court granted summary judgment in favor of American on Plaintiffs' claim for intentional infliction of emotional distress against American. On January 29, 2001, Plaintiffs dropped their intentional infliction of emotional distress against Transcontinental. Defendants then filed a joint two-part motion for summary judgment. As a result, the issues remaining to be addressed via summary judgment are whether: (1) Plaintiffs' negligence claims

tioned, and thus, appropriate for judicial notice, whether requested or *sua sponte*. Fed. R.Evid. 201(b).

Plaintiffs also object to other documents that are already in the record of this case, either as pleadings or judicial orders by *this Court*. The Court does not need to take judicial notice of such documents, and their inclusion as exhibits to a declaration for the Court's convenience is neither inappropriate or objectionable. Plaintiffs' frivolous objections needlessly consume the court's time and increase the cost of this already expensive litigation.

are viable; (2) Plaintiff Payne's negligent infliction of emotional distress claims; (3) Plaintiff Payne can recover emotional distress damages as a remedy for breach of contract; (4) Transcontinental has a duty to indemnify Plaintiffs for the Clark settlement; and (5) Plaintiffs are entitled to the *Clark* settlement as damages for breach of duty to defend.

## III. *LEGAL STANDARD*

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is not to make findings of fact, but to perform the threshold inquiry to determine whether there exists any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, if the nonmoving party has the burden of proof on a given issue, the moving party can prevail by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## IV. *DISCUSSION*

### A. Negligence

 Plaintiffs allege that Transcontinental breached a duty of due care owed them by failing to consult with an attorney regarding a novel legal issue affecting the scope of coverage. Whether California law recognizes a negligent investigation cause of action against an insurer is a question of law appropriate for the court to address on summary judgment. Although contract and tort are distinct branches of California law, "the same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts." *North American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 774, 69 Cal.Rptr.2d 466 (1997). Where the cause of action "arises from breach of a promise set forth in contract, the action is ex contractu, but where it arises from a breach of duty growing out of contract[,] it is ex delicto." *Id.* at 775, 69 Cal.Rptr.2d 466. As a result, "[e]ven where there is a contractual relationship between the parties, a cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed." *Eads v. Marks*, 39 Cal.2d 807, 810, 249 P.2d 257 (1952). Thus, failure to use reasonable care in performing contractual duties may give rise to actions sounding in tort and in contract. *See, e.g., North American Chemical Co.*, 59 Cal.App.4th 764, 69 Cal. Rptr.2d 466 (allowing tort action where defendant negligently failed to perform its duties to bag and ship plaintiff's product); *Allred v. Bekins Wide World Van Services*, 45 Cal.App.3d 984, 989, 120 Cal. Rptr. 312 (1975) (finding defendant mover

bound, as a matter of law, to use reasonable care and skill and negligent failure to do so is a tort as well as a breach of contract); *Eads,* 39 Cal.2d 807, 249 P.2d 257; (allowing claim for negligent milk delivery).

■ An insurance contract generally imposes three duties on an insurer: (1) the duty to make immediate inquiry into the facts of any serious accident as soon as practicable after its occurrence; (2) the duty to employ competent counsel to represent its insured and to provide adequate funds for the defense of the suit; and (3) the duty to keep abreast of the progress and status of the litigation so that it may act intelligently and in good faith on settlement offers. *Merritt v. Reserve Ins. Co.,* 34 Cal.App.3d 858, 882, 110 Cal.Rptr. 511 (1973).

Defendants argue that when an insured refuses to defend, extra-contractu damages attach only if the refusal is made in bad faith, and not for mere negligence in handling or investigating the claim. In other words, the insurer is liable for tort damages only for breach of the implied covenant of good faith and fair dealing, and its insured may not support a cause of action in negligence against it. Plaintiffs argue that because an insurer has the duty to make an investigation, an insurer can be liable for the negligent investigation of its claim, even when the insurer did not breach the covenant of implied faith and fair dealing.

The case law is unclear whether the negligent investigation is a breach of the implied covenant of good faith and fair dealing, a predicate to breach of the duty to defend, or sustainable as an independent tort. In *Egan v. Mutual of Omaha Ins. Co.,* the California Supreme Court found the insurer breached the covenant of good faith and fair dealing when it failed to throughly investigate the foundation for denying disability payments to its insured. 24 Cal.3d 809, 817–19, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). The court held that "it is essential that an insurer fully inquire into possible bases that might support the insured's claim," and "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Id.* at 818–19, 169 Cal.Rptr. 691, 620 P.2d 141. It viewed failure to do so as a breach of the implied covenant of good faith and fair dealing.[2] *See id.* at 818–19, 169 Cal. Rptr. 691, 620 P.2d 141. *See also, California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 50–51, 221 Cal.Rptr. 171 (1985) (treating allegation of inadequate investigation as an allegation of breach of the implied covenant).

More recently, in *Eigner v. Worthington,* 57 Cal.App.4th 188, 66 Cal.Rptr.2d 808 (1997), the court treated negligent investigation as both a predicate for breach of the duty to defend and a possible breach of the implied covenant. While discussing an insurer's duty to defend, the court stated:

> [A]n insurer may breach the implied covenant of good faith and fair dealing by failing to properly investigate its insured's claim. The risk that an insurer takes when it denies coverage without investigation is that the insured may later be able to prove that a reasonable investigation would have uncovered evidence to establish coverage or a potential for coverage. In that case,

---

**2.** The California Supreme Court has similarly viewed an insurer's negligent failure to settle as a breach of the duty to accept reasonable settlements that is included within the implied covenant of good faith and fair dealing. *See*

*PPG Industries Inc. v. Transamerica Ins. Co.,* 20 Cal.4th 310, 316, 84 Cal.Rptr.2d 455, 975 P.2d 652 (1999); *Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 430–32, 58 Cal.Rptr. 13, 426 P.2d 173 (1967).

the insurer will be liable for the costs of defense already incurred by the insured and could also be exposed to tort liability. *Id.* at 195, 66 Cal.Rptr.2d 808. (internal citations omitted). Whether the *Eigner* court meant "tort liability" to mean the implied covenant or a separate action in negligence is unclear.

The implication that negligent investigation breaches the implied covenant sits in tension with a second cluster of cases that require more than negligence before finding a breach of the implied covenant. In *Sanchez v. Lindsey Morden Claims Services, Inc.,* the court stated that "negligence is not among the theories of recovery generally available against insurers." 72 Cal.App.4th 249, 254, 84 Cal.Rptr.2d 799 (1999). The Ninth Circuit has also recognized that "[i]n California, mere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case." *Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1166 (9th Cir.1995); *see also, National Life & Accident Ins. Co. v. Edwards,* 119 Cal.App.3d 326, 339, 174 Cal. Rptr. 31 (1981); *Brown v. Guarantee Ins. Co.,* 155 Cal.App.2d 679, 319 P.2d 69 (1957).

Defendants rely on *Tento International v. State Farm,* 222 F.3d 660 (9th Cir.2000) for their argument that California does not recognize a separate negligence claim against insurers. In *Tento,* an insured sued its insurer for negligently denying coverage. The trial court found the claim was not covered by the insurance policy. On appeal, the Ninth Circuit found that the policy covered the claim, but in remanding, the court questioned whether the negligent handling claim was viable under California law after *Sanchez* and *Aceves. See id.* at 664. This, of course, is dicta since it is not necessary to determining coverage. Furthermore, neither *Sanchez* nor *Aceves* are negligent handling claims against an insurer. *Sanchez* held that an independent insurance adjuster did not owe a duty of care to an insured, but did not speak to whether the insurer itself owes its insured such a duty. 72 Cal. App.4th at 253–55, 84 Cal.Rptr.2d 799. *Aceves* involved negotiations between the insurer and insured for damage done to the insureds' house. 68 F.3d 1160. There the court held that the standard of care an insurer owes its insured under the covenant of good faith and fair dealing when negotiating with its insured depends on whether the insured is represented by counsel. *Id.* at 1167.

■ Plaintiffs argue that California law does support a negligence investigation claim against an insurer separate from the duty to defend and the implied covenant. Plaintiffs principally rely on *Merritt,* 34 Cal.App.3d 858, 110 Cal.Rptr. 511 (1973) and *Pershing Park Villas Homeowners Ass'n. v. United Pacific Ins. Co.,* 219 F.3d 895 (9th Cir.2000). In *Merritt,* the insured sued its insurer for the negligent conduct of the litigation. The Court, after holding the insurer was not liable for the negligence of counsel, indicated that the insurer "remains liable for the negligent performance of its own duties." 34 Cal.App.3d at 881–82, 110 Cal.Rptr. 511. *Merritt* involved an insurer's duty to select counsel, not the duty to investigate. The duty to select counsel differs from the duty to investigate in that there is an underlying duty to defend flowing from the duty to investigate. An insurer's duty to defend is triggered by the possibility of coverage, and an insurer has the burden of showing that at the time of tender, the tendered claim can not be covered under the policy. *See Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). When an insur-

er fails to adequately investigate a claim, the insurer can not meet this burden and will be liable for breaching its duty to defend. In contrast, when an insurer is negligent in selecting counsel, there is no underlying contractual duty, and the insured must be able to sue in negligence or not at all.

Plaintiffs also argue that the Ninth Circuit recognized the viability of a negligence claim in *Pershing Park Villas Homeowners Ass'n,* 219 F.3d 895, when it affirmed an award for bad faith and negligence. The only reference the court makes to negligence is in the statement of facts. *Id.* at 899. Moreover, the court affirmed the judgment on bad faith grounds without discussing negligence. *See id.* at 901–902. The Court finds the isolated and singular reference does not support recognizing negligence claims against an insured.

Plaintiffs do not cite a single example where a court has found an insurer's failure to properly investigate capable of supporting a separate negligence cause of action under California law. Instead, Plaintiffs urge the Court to rely on fundamental tort principles to recognize its negligence claim. The Court finds doing so would be an expansion unwarranted by California case law and declines to do so.

 An approach more consistent with California case law is to treat negligent investigation as a predicate for breach of the duty to defend and, if wrongful, a breach of the implied covenant. As this Court previously discussed, an insurer breaches its duty to defend if it refuses to defend a claim that *may* fall within policy coverage. *See* Order dated May 1999, published as *Everett Assoc. Inc. v. Transcontinental,* 57 F.Supp.2d 874, 878 (N.D.Cal.1999) (citing *Montrose Chemical*

*Corp.,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153). In other words, the insurer must prove that the claim cannot fall within policy coverage. *Id.* Where an insurer negligently investigates the claim, the insurer will not be able to establish that the claim cannot fall within policy coverage. Negligent investigation thus results in a breach of the duty to defend. *See Bogard v. Employers Casualty Co.,* 164 Cal.App.3d 602, 615, 210 Cal.Rptr. 578 (1985) ("By alleging that [the insurer] did not properly investigate the claims ..., [the insureds] have *only* alleged a breach of the duty to defend." (emphasis added)). If the refusal to defend is unreasonable or made in bad faith, then it also breaches the implied covenant and tort damages are available. California courts have not treated negligent investigation as a separate cause of action in negligence. Recognition of such a claim by a federal court sitting in diversity jurisdiction would be an inappropriate expansion of state law. This Court has already determined that Defendants breached their duty to defend, but not the implied covenant. It now holds that Plaintiffs' allegation of inadequate investigation can not, as a matter of law, support a separate claim in negligence.

## B. Negligent Infliction of Emotional Distress

 Negligent infliction of emotional distress, although often pled as a separate cause of action, is a subcategory of the tort of negligence. *Burgess v. Superior Court,* 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *see generally,* 6 Witkin, *Summary of California Law* § 838 (9th ed. 2000 Supplement). Defendants argue that if Plaintiffs can not maintain an action in negligence, *see* discussion *supra* Part A, Payne accordingly can not maintain his negligent infliction of emotional

distress claim.[3] Plaintiffs assert that California courts have recognized negligent infliction of emotional distress claims by an insured against its insurer.

Plaintiffs rely on *Bogard v. Employers Casualty Co.*, 164 Cal.App.3d 602, 210 Cal. Rptr. 578 (1985). In *Bogard*, the appellate court granted the insured leave to amend the complaint to state a cause of action for the negligent infliction of emotional distress against its insured arising out of the insurer's failure to defend its insured. Defendants argue that because *Bogard* relied on *Jarchow v. Transamerica Title Ins. Co.*, 48 Cal.App.3d 917, 122 Cal.Rptr. 470 (1975) which was overruled by *Soto v. Royal Globe Insurance Co.*, 184 Cal.App.3d 420, 229 Cal.Rptr. 192 (1986), *Bogard* is no longer valid precedent. Plaintiffs assert that *Bogard* is still good law since neither *Soto* nor a subsequent decision has overruled or criticized *Bogard*.[4] Although the California Supreme Court did not explicitly mention *Bogard* in *Soto*, its holding that "a cause of action for recovery of damages for emotional distress based on garden variety negligence concepts" is an extension "unwarranted by California law" leaves little room for *Bogard* survival. *Id.* at 434, 210 Cal.Rptr. 578.

■■■ Assuming *arguendo*, *Bogard* survives *Soto* and an insured may state a claim of negligent infliction of emotional distress against its insurer, Payne must meet all the traditional tort elements of a legal duty, breach, damages, and proximate causation. *Burgess*, 2 Cal.4th at 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197. To establish Transcontinental owed Payne a duty of care and proximate causation, Plaintiff must establish that he qualifies as a "direct victim" of Defendants' breach under *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980) or as a "bystander" under *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). "Bystander" cases are limited to circumstances where the plaintiff witnesses negligently inflicted injury on a close family relation. *See, e.g., Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977) (husband-wife); *Archibald v. Braverman*, 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969) (parent-child) (criticized on other grounds); *Kately v. Wilkinson*, 148 Cal. App.3d 576, 582, 195 Cal.Rptr. 902 (1983) (family friend insufficient). As the relationship between Payne and his company is a business, rather than familial, relationship, Payne can not seek emotional distress damages on the bystander theory.

■■■ "Direct victims" are plaintiffs who suffer emotional distress damages resulting from a breach of duty owed the plaintiff that is "assumed by the defendant, or imposed on the defendant as a matter of law, or that arises out of a relationship between [plaintiff and defendant]." *Burgess*, 2 Cal.4th at 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197. Plaintiffs assert that Defendants owed Payne a duty of care arising out of the insurance policy, under which Payne is "an insured." The difficulty arises in that Defendants refused to defend Everett, not Payne, in the *Clark* action and Payne's emotional distress claims

---

**3.** Whether Payne can recover emotional distress damages as a remedy for Defendants' breach of its duty to defend is discussed in Part D *infra*.

**4.** The Court notes that only one other court has cited *Bogard* on the issue of negligent infliction of emotional distress. In *Sawhney*

*v. Allstate Ins. Co.*, 1995 WL 500531,*6 (C.D.Cal.1995), the court dismissed the claim for lacking the required elements of "outrageous conduct" and "severe emotional distress." The Court did not address whether the claim itself was viable, but the dismissal was without prejudice.

flow from Defendants' refusal to defend Everett. Plaintiffs fail to explain how Defendant's failure to defend Everett was "directed at" Payne. As recognized in *Schwarz v. Regents of Univ. of Calif.*, 226 Cal.App.3d 149, 163, 276 Cal.Rptr. 470 (1990), "that a third party suffers an adverse consequence does not mean the defendant's conduct was directed at the third party." It would turn the "foreseeable plaintiff" doctrine on its head to allow one insured to sue for negligent ·infliction of emotional distress arising from an insurer's refusal to defend a separate insured. To borrow the court's language in *Biakanja v. Irving*, 49 Cal.2d 647, 649–50, 320 P.2d 16 (1958), there is no nexus between Payne's status as an insured and the "end and aim" of the contractual relationship between Everett and Defendants. Without such a nexus, Defendants' actions toward Everett can not be the proximate cause of Payne's emotional distress.

### C. Emotional Distress Damages flowing from breach of the duty to defend

Plaintiffs also seek to recover Payne's emotional distress damages as damages flowing from Defendants' breach of contract in failing to defend Everett, while Defendants argue that tort damages are unavailable absent a breach of the implied covenant.

Plaintiffs rely on *State Farm v. Allstate*, 9 Cal.App.3d 508, 88 Cal.Rptr. 246 (1970) as support for recovering emotional distress damages from a breach of the duty to defend. In *State Farm*, the appellate court upheld emotional distress damages for breach of the duty to defend. The court recognized that "[t]hus far, California decisions dealing with refusal to defend tend to conceptualize it as a breach of contract rather than a tort," but found that the insurer is liable for all the detriment, including emotional distress, caused by its breach. *Id.* at 530, 88 Cal.Rptr. 246.

Although no court has explicitly criticized *State Farm*, subsequent decisions construe *State Farm* as allowing tort damages when an insurer breaches the implied covenant, rather than the duty to defend alone. For example, *Aero–Crete, Inc. v. Superior Court* cited to *State Farm* to support its statement: "[B]ecause of the special duties owed by insurers to insureds, an insurer which acts unreasonably in failing to defend its insured may be liable for enhanced tort damages in a bad faith cause of action." 21 Cal.App.4th 203, 213, 25 Cal.Rptr.2d 804 (1993). Similarly, *Frazier v. Metropolitan Life Ins. Co.*, stated that *State Farm* "stands for the proposition that damages for distress may be awarded in an action for breach of the covenant of good faith and fair dealing...." 169 Cal.App.3d 90, 101, 214 Cal. Rptr. 883 (1985) (criticized on other grounds). Likewise, *Grywczynski v. Shasta Beverages, Inc.*, relied on *State Farm* in recognizing the possibility of emotional distress damages that resulted from the defendants' alleged breach of an implied covenant of good faith and fair dealing. 606 F.Supp. 61, 66 (N.D.Cal.1984).

More recently, the California Supreme Court in *Erlich v. Menezes*, 21 Cal.4th 543, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999), addressed whether emotional distress damages were recoverable for breach of a construction contract. The Supreme Court's review of cases allowing emotional distress damages for breaches of contract did not include breach of insurance contracts by failing to defend, although it did recognize that tort damages were available for the breach of the implied covenant. *See id.* at 551–52, 568–61, 87 Cal.Rptr.2d 886, 981 P.2d 978.

Plaintiffs' reliance on *Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13,

426 P.2d 173 (1967) is unpersuasive. *Crisci* recognized that "peace of mind and security" are among the considerations in purchasing insurance and "recovery of damages for mental suffering has been permitted for breach of insurance contracts." *Id.* at 434, 58 Cal.Rptr. 13, 426 P.2d 173. *Crisci*, however, clearly viewed the failure to accept reasonable settlements to be a duty within the implied covenant of good faith and fair dealing. *Id.* at 430, 58 Cal.Rptr. 13, 426 P.2d 173. Because the "breach *also* constitute[d] a tort," the court in *Crisci* recognized emotional distress damages. *Id.* at 434, 58 Cal.Rptr. 13, 426 P.2d 173. Finally, Plaintiffs are unable to provide the Court with a single example of where an insured has recovered emotional distress damages in the absence of a breach of the implied covenant.

■ This Court finds that California law does not support recovery of emotional distress damages where insurer breached only its duty to defend, but not the implied covenant. Since this Court has previously found Defendants did not violate the implied covenant, Defendants can not, as a matter of law, be liable for tort damages, such as Payne's emotional distress damages, as a remedy for Defendants' breach of contract.

### D. Contractual Duty to Indemnify the Clark Settlement

■ In the underlying *Clark* action, Plaintiffs entered into a settlement in which Plaintiffs promised to pay Clark $25,000 for past infringement, a $5.00/unit royalty on future sales with an annual minimum of $26,500, and $225,000 for Clark's attorney fees. Plaintiffs now seek to recover the *Clark* settlement under the indemnification clause in the insurance policies. The CGL policies obligate Defendants to pay "sums that the Insured becomes legally obligated to pay as damages because of . . . 'advertising injury' " during the policy period. (FAC, Ex. A & B) The question here is whether the *Clark* settlement or any component of it qualify as "damages because of advertising injury."

Plaintiffs assert that they are entitled to indemnification of the *Clark* settlement because the settlement is Clark's damages from Everett's "offer to sell" patent infringement and such infringement is an advertising injury. Under the CGL policies issued by Defendants, an advertising injury includes injury arising out of the "misappropriation of advertising ideas or style of doing business" or the "infringement of . . . title." This Court held in May 1999 that policy language was ambiguous and could reasonably be construed to cover claims for "offer to sell" patent infringement. The Court held that Defendants owed a duty to defend Everett in the underlying *Clark* suit. Plaintiffs assert that this ruling entitles them to indemnification of the amount of the final settlement in the *Clark* suit. Contrary to Plaintiffs' assertions, the May 1999 Order did not find that "offer to sell" patent infringement constitutes a covered "advertising injury" offense. Rather, it found that there was the possibility that "offer to sell" patent infringement constituted an advertising injury which triggered Defendants' duty to defend. At issue today is not the *possibility* of coverage, but rather the *actual existence* of coverage.

■ At the time of the Court's ruling, the Court faced a question of first impression as to whether "advertising injury" was broad enough to include the "offer to sell" patent infringement created by the 1994 amendment to Section 271 of the Patent

Act.[5] Subsequent to the Court's May 1999 Order, a California court has addressed whether "advertising injury" includes "offer to sell" patent infringement. In *Maxconn Inc. v. Truck Insurance Exchange*, 74 Cal.App.4th 1267, 88 Cal.Rptr.2d 750 (1999), the insurer refused to defend its insured Maxconn against allegations that Maxconn had infringed upon a patent by offering to sell an infringing product. Like the CGL policies at issue here, advertising injury included misappropriation and infringement of title. *Id.* at 1271, 88 Cal.Rptr.2d 750. The court held:

> The advertising injury offenses contained in the Truck policy consist of common and distinct categories of actionable conduct. A claim for patent infringement is also a distinct legal claim governed by a vast body of statutory and case law. Yet, there is no mention of patent infringement anywhere in this CGL policy. The absence of any express reference to patent infringement in the policy would lead a reasonable layperson to the conclusion that patent infringement is not covered. *Id.* at 1276, 88 Cal.Rptr.2d 750.

When a state court of appeals subsequently indicates that a federal court incorrectly interpreted state law, the state court's interpretation governs. *See Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir.1983). Thus, this Court must heed the *Maxconn*

court. Other courts have also found that advertising injury does not include "offer to sell" patent infringement.[6] *See, e.g., United National v. SST Fitness*, 182 F.3d 447 (6th Cir.1999) (finding no duty to defend where complaint alleged SST advertised an infringing product on grounds that policy did not provide coverage for patent infringement without discussion of the 1994 amendment); *Miller, Inc. v. Travelers Indem. Co.*, 162 F.3d 454 (6th Cir.1998) (finding patent infringement arising from promotional material did not constitute an "advertising injury" on the grounds that if the insurer had intended to cover patent infringement, it would have included it in the policy language expressly); *Heritage Mutual Ins. Co. v. Advanced Polymer Technology, Inc.*, 97 F.Supp.2d 913, 925–31 (S.D.Ind.2000) (finding that the advertising of an alleged infringing product is not "misappropriation"); *Tradesoft Technologies, Inc. v. The Franklin Mut. Ins. Co.*, 329 N.J.Super. 137, 746 A.2d 1078, 1085–86 (2000); *Abb Flakt, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 731 A.2d 811 (Del.1999); *FileNet Corp. v. Chubb Corp.*, 324 N.J.Super. 476, 735 A.2d 1203, 1215–16 (1997). In light of this recent case law, the *Clark* settlement, even if wholly comprised of damages for "offer to sell" patent infringement, is not an "advertising injury" covered under the policies' indemnification clauses.[7]

---

**5.** The amended Section 271 states: "[W]hoever without authority makes, uses, *offers to sell,* or sells any patented invention within the United States … during the time for the patent, therefore, infringes the patent." 35 U.S.C. § 271 (emphasis added).

**6.** Defendants' reliance on other cases is misplaced. In *Mez Industries, Inc. v. Pacific National Insurance*, 76 Cal.App.4th 856, 90 Cal. Rptr.2d 721 (1999), the alleged infringement occurred prior to the effective date of the amendment to 35 U.S.C. § 271(a). In *U.S. Test, Inc. v. NDE Environmental Corp.*, 196

F.3d 1376 (Fed.Cir.1999), the underlying complaint did not allege liability arising out of an offer to sell an infringing product, but rather products made by an infringing device.

**7.** Defendants raise a second, exclusionary theory for why Plaintiffs are not entitled to reimbursement. Defendants contend that even if patent infringement was covered, the entire settlement is excluded from coverage because Everett's damages arose out of advertisements whose first publication took place prior to the policy period. Plaintiffs contend that since there could be no liability for any of its adver-

### E. The *Clark* Settlement as Breach of Contract Damages

Alternatively, Plaintiffs seek to recover the *Clark* settlement as damages flowing from Defendants' breach of contract in failing to defend Everett.

It is a general rule that when an insurer "improperly refused to defend an insured, the insured is entitled to make a reasonable settlement of the claim in good faith, and then maintain an action against the insurer to recover the amount of the settlement." *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 501 (9th Cir.1997) (quoting *Isaacson v. California Ins. Guarantee Assn.*, 44 Cal.3d 775, 791–92, 244 Cal.Rptr. 655, 750 P.2d 297 (1988)). Furthermore, a reasonable settlement made by the insured to terminate the underlying claim constitutes *presumptive evidence* of the insured's liability on the underlying claim and the amount of such liability. *See Isaacson*, 44 Cal.3d at 791, 244 Cal.Rptr. 655, 750 P.2d 297. When a settlement of the underlying claim has been made, the question of whether the liability of the insured was one which the contract of insurance covered is still open and may be litigated and determined in the action brought by the insured to recover the amount so paid in judgment. The settlement becomes presumptive evidence only of the liability of the insured and the amount thereof. *Lamb v. Belt Casualty Co.*, 3 Cal.App.2d 624, 631–32, 40 P.2d 311 (1935) (relied on in *Isaacson*, 44 Cal.3d at 791, 244 Cal.Rptr. 655, 750 P.2d 297); *see also, Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 527–28, 42 Cal.Rptr.2d 295 (1995) (quoting *Lamb*).

This parallels the process for recovering damages rendered in final judgments. "When the issues upon which coverage depends are not raised or necessarily adjudicated in the underlying action, then the insurer is free to litigate those issues in the subsequent action and present any defenses not inconsistent with the judgment against its insured." *Pruyn*, 36 Cal.App.4th at 514 n. 15, 42 Cal.Rptr.2d 295 (citing to *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 564–65, 91 Cal.Rptr. 153, 476 P.2d 825 (1970)); *see also, Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 561–62, 334 P.2d 881 (1959). "If, in that subsequent action, it is determined that there was no coverage, then the measure of damages for a wrongful failure to defend would be limited to the costs and attorney fees expended by the insured in defending the underlying action." *Pruyn*, 36 Cal.App.4th at 514 n. 15, 42 Cal.Rptr.2d 295; *see also Amato v. Mercury Casualty Co.*, 18 Cal.App.4th 1784, 1793–1794, 23 Cal.Rptr.2d 73 (1993). Thus, the insurer may litigate whether the policy covered the liability underlying the settlement in the subsequent action, and damages paid pursuant to a settlement are recoverable if the insurance policy covered such damages.

This is consistent with *Gray v. Zurich Ins. Co.*, in which the California Supreme Court held an insurer liable for judgment even though the "judgment ha[d] not *necessarily* been rendered on a theory within the policy coverage." 65 Cal.2d 263, 266, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis added). The insurer in *Gray* had argued that it only had to reimburse the insured's expenses in defending the third party action, but not payment of the judg-

---

tisements published before January 1, 1996 (the effective date of amendment to the patent statute), coverage for the latter published infringing advertisements was not barred by the first publication rule. Since the Court finds

that the settlement damages are not damages incurred from advertising injury, the Court declines to consider Defendants' alternative theory.

ment which the policy might not have covered. *Id.* at 279–80, 54 Cal.Rptr. 104, 419 P.2d 168. The court rejected this hard-and-fast rule because it would "impose upon the insured 'the impossible burden' of proving the extent of the loss caused by the insurer's breach." *Id.* at 280, 54 Cal. Rptr. 104, 419 P.2d 168. The court explained:

> Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel, or to present every reasonable defense, or to carry his cause to the highest court having jurisdiction. *Id.* (quoting *Arenson v. National Auto. & Cas. Ins. Co.,* 48 Cal.2d 528, 539, 310 P.2d 961 (1957)).

Thus, the settlement is presumptive evidence of the liability of the insured and the amount. *Gray* does not preclude the insurer from establishing that the damages were not covered under the policy in the first place, i.e., that the insurer's breach did not proximately cause the damages.

The Court recognizes that some California courts have sanctioned "automatic[ ... ] liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage." *Kapelus v. United Title Guaranty Co.,* 15 Cal.App.3d 648, 653, 93 Cal.Rptr. 278 (1971). In support of the statement, however, the court in *Kapelus* cited only to a law review article. In *Cravens, Dargan & Co. v. Pacific Indem. Co.,* 29 Cal.App.3d 594, 602, 105 Cal.Rptr. 607 (1972), for example, the court stated that "[t]he penalty for failure to defend is liability for the full amount of a reasonable

settlement." The statement, however, was dicta because the defense was never tendered to the insurer in *Cravens.* Furthermore, the support for the statement was merely that "Appellants cite *Gray v. Zurich Ins. Co.* [and other cases]" indicating that the court relied on appellants' statement of the law without independent verification by the court. *Id.* Finally, in *Cravens* the insurance policies at issue did cover the underlying damages. Similarly, in *Wint v. Fidelity & Casualty Co.,* 9 Cal.3d 257, 261, 107 Cal.Rptr. 175, 507 P.2d 1383 (1973), the pronouncement that "[i]f there is potential liability on the part of the insurer under a policy of insurance, there is a duty to defend, and the insurer is liable for all damages reasonably incurred by the insured in the event of a failure to defend" was made in a case where the insurance policy at issue covered the underlying damages. Furthermore, *Wint* is consistent with *Gray* in that noncovered damages would not be "reasonably incurred" as a result of the failure to defend.

Much of this confusion arises because where the failure to defend also violates the covenant of good faith and fair dealing, courts have generally held the insurer liable for the full settlement. As the Ninth Circuit recently explained: "The distinction is a reasonable one. The insured is relieved of proving the extent of damages in a bad faith action in order to remove the insurer's incentive to strategically disavow responsibility for the insured's defense with everything to gain and nothing to lose." *Pershing Park Villas Homeowners Ass'n,* 219 F.3d at 902.

▪ An insured is entitled to recover all damages proximately caused by the insurer's failure to defend. An insurer, however, is not responsible and not required to reimburse its insured for inevit-

able and unavoidable damages.[8] When a plaintiff defends itself in the underlying action and incurs liability, the plaintiff may not contend that the outcome would have been different if the insurer had defended the action. Having chosen to defend the underlying action, Plaintiffs are not entitled to a second bite at the apple. The *Clark* settlement compensated Clark for Plaintiffs' patent infringement, and both Plaintiffs and Defendants are bound to that outcome. This is a matter of simple causation. Plaintiffs must show that "but for" Defendants' breach, they would not have been liable for the *Clark* settlement. However, Plaintiffs would have been liable in the *Clark* action whether they defended themselves or been defended by Defendants. As a result, Plaintiffs' obligations to pay the *Clark* settlement were not, as a matter of law, caused by Defendants' failure to defend. Since there is no coverage under the indemnification clause, "the measure of damages for a wrongful failure to defend [is] limited to the costs and attorney fees expended by the insured in defending the underlying action." *Pruyn,* 36 Cal.App.4th at 514 n. 15, 42 Cal.Rptr.2d 295. This Court has previously awarded Plaintiffs their attorney fees in defending the *Clark* litigation.

## V. *CONCLUSION*

For the reasons set forth above, the Court hereby GRANTS Defendants' motion for partial summary judgment as to:

(1) Plaintiffs' Fifth and Sixth Causes of Action for Negligence;

(2) Plaintiffs' Thirteen and Fourteenth Causes of Action for Negligent Infliction of Emotional Distress;

(3) Plaintiffs' Demand for Emotional Distress Tort Damages under their Seventh, Eighth, Ninth and Tenth Causes of Action for Breach of Contract;

(4) Plaintiffs' Demand for Indemnification of the *Clark* settlement under their Third, Fourth, Ninth and Tenth Causes of Action; and

(5) Plaintiffs' Demand for Reimbursement of the *Clark* Settlement as Damages under their Seventh, Eighth, Ninth and Tenth Causes of Action for Breach of Contract.

The Court DENIES Plaintiffs' cross-motion for summary judgment as to negligence, negligent infliction of emotional distress, consequential damages for breach of the duty to defend, and Payne's standing to seek emotional distress damages.

The Court FURTHER ORDERS THAT the trial date, presently scheduled for March 12, 2001, be continued for one week to allow the parties to consider whether a jury trial is still necessary on the remaining issue of Transcontinental's counterclaim for rescission and for the parties to prepare in light of the Court's Order. Trial is thus rescheduled for Monday, March 19, 2001 at 9:30 A.M. in Courtroom 1. Parties are to submit Joint Jury Instructions, in hard and electronic (Word Perfect compatible) form, by Monday, March 12, 2001.

IT IS SO ORDERED.

---

**8.** A corollary to this is that the insurer is not responsible for voluntary, prospective aspects of the settlement. *Zurich Ins. Co. v. Killer Music, Inc.,* 998 F.2d 674 (9th Cir.1993) (requiring on remand the separation of award into the "compensation" for rights to songs and the damages from copyright infringement). The Court addresses this issue further *infra.*