[No. B087100. Second Dist., Div. Six. Feb. 29, 1996.]

MARIA MARISCAL, Plaintiff and Respondent, v.
OLD REPUBLIC LIFE INSURANCE COMPANY, Defendant and
Appellant.

1618

**COUNSEL**

Smith, Helenius & Hayes, Kevin J. Smith and Carl E. Hayes for Defendant and Appellant.

Ernst & Mattison, Patricia Gomez and Don A. Ernst for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—A man purchases an insurance policy for accidental death and dismemberment coverage. His wife is the beneficiary of the policy. He dies as a result of an auto accident which caused head injuries and, ultimately, heart failure. The insurance company conducts a perfunctory investigation of the wife's claim and denies coverage, stating that "death was due to an illness and not caused by bodily injury due to an accident." Evidence available to the insurance company, which it did not seek to discover, shows that death was caused by the accident.

The insurance company breached the covenant of good faith and fair dealing because it did not fulfill its obligation to protect the interest of its insured. When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interest above that of its insured.

Old Republic Life Insurance Company (Old Republic) appeals from that part of the judgment awarding damages in favor of respondent, Maria Mariscal (Mrs. Mariscal), for breach of the covenant of good faith and fair dealing.[1] Substantial evidence supports the judgment and we affirm.

## FACTS

Paulino Mariscal (Mariscal) purchased an insurance policy from Old Republic for accidental death and dismemberment coverage. He named his wife, Mrs. Mariscal, as beneficiary. Mariscal was driving his automobile on Highway 101 when it sped off the road over a berm and plunged down a 50-foot ravine.

Richard Hughes, a family friend, was driving behind Mariscal at the time of the accident. He was the first one to see Mariscal a few minutes after the accident. Mariscal was lucid and he did not complain of chest pain. He had no difficulty breathing and he did not know why he drove off the road.

Matthew Chapin also arrived at the accident scene within minutes. Mariscal complained to Chapin about a cut to his head, but he did not complain of chest pain to Chapin either.

Frank Anderson, a fire officer, came to the accident scene. In his California Department of Forestry accident response report he stated that Mariscal suffered a head trauma in the accident. Because Mariscal appeared to suffer from head trauma and not cardiac conditions, Anderson did not fill in any of the boxes on the report form for cardiac arrest or heart attack.

Sean Pence, a paramedic, arrived and found Mariscal's blood pressure to be normal and found nothing unusual concerning Mariscal's heart functions. Mariscal was conscious, alert and oriented. Pence saw no evidence that Mariscal had cardiac malfunction shortly before the accident. Mariscal complained of pain around his neck, and not being able to breathe while lying down.

---

[1]The cross-appeal of Mrs. Mariscal was dismissed as of December 26, 1995.

When Mariscal arrived at the hospital, he still showed no medical indications of heart failure. The hospital's basic admitting diagnosis was "multiple trauma." The two primary factors listed in the admission diagnosis were "severe motor vehicle accident with multiple contusions" and a "brain contusion."

The hospital was familiar with the patient. A synopsis of his history of heart disease was included in the admitting diagnosis list. "Syncope" (passing out) with subsequent development of automobile accident secondary to cardiac arrhythmia, probably ventricular tachycardia, was *suspected*. After arriving in the emergency room at the hospital, Mariscal fell into a coma. His condition deteriorated rapidly and he died two days later.

Hospital staff ". . . were not sure if the patient had a myocardial infarction triggered by the stress of the accident or the hypoxia or [whether it] happened when the patient was driving the car causing him to have irregular heart beats, syncope and subsequent accident."

The discharge diagnosis list was similar to the admitting diagnosis, listing the accident and his brain contusion as the first two factors. The discharge diagnosis also mentioned the respiratory arrest, the laceration on his forehead with multiple contusions and progressive coma secondary to hypoxic encephalopathy with involvement of brain stem (the coma became steadily more severe due to loss of oxygen to the brain caused by malfunction of the brain stem). In the discharge summary, Doctor Pedro Diaz, Mariscal's treating physician, wrote that the eventual cause of death was "electromechanical dissociation and then ventricular fibrillation due to severe myocardial disease due to atherosclerotic heart disease."

The death certificate provided spaces for the physician to list causes of death. Doctor Diaz filled out the form as follows: "21. Death was caused by . . . (A) Cardiopulmonary arrest due to (B) Myocardial arrest due to (C) Myocardial Arteriosclerosis." The form also asked: "25. Other significant conditions contributing to death but not related to causes given in 21." There Doctor Diaz wrote "Brain Trauma, Hypoxic Encephalopathy, CHF [congestive heart failure]."

Mrs. Mariscal made a claim for benefits under the instant policy. The claims adjuster, Rosemary Rybicki, asked Doctor Diaz to complete the cause of death portion of Old Republic's proof of loss claims form. Doctor Diaz stated and underlined that Mariscal's death was "due to accident." He also wrote that his death was "indirectly related [to] Brain Contusion, Coma, Brain Hypoxia." He stated that the disease or condition directly leading to

death was cardiopulmonary arrest with antecedent causes being myocardial and atherosclerotic heart disease. He also indicated that Mariscal's heart condition and accident-related injuries caused the death.

Rybicki ordered an independent company, Equifax, to conduct an investigation. That investigation provided only the California Highway Patrol's traffic collision report, the death certificate, some of the hospital records, the proof of loss form and a brief synopsis. Old Republic never contacted Hughes, Chapin, Pence, Anderson or Doctor Diaz during its investigation. Old Republic did not request the accident report filed by Anderson. Old Republic did not have its own medical doctor review the records it obtained.

Rybicki recommended to Old Republic's claims manager, Mr. Nick Vassalo, that Mrs. Mariscal's claim be denied because the insured had a heart attack and lost control of his vehicle. On May 31, 1991, Vassalo sent Mrs. Mariscal a letter denying her claim on the ground that Mariscal's death was due to an illness and not caused by bodily injury due to an accident.

This prompted Mrs. Mariscal to file the instant suit. After trial, the jury rendered a special verdict finding that the most important event in causing Mariscal's death was the injuries he sustained in the automobile accident. The jury also found that Old Republic unreasonably failed to pay the policy benefits. It did not find that Old Republic was guilty of oppression, fraud or malice in its failure to pay policy benefits. It determined total damages to be $250,000.

The judgment awarded Mrs. Mariscal insurance policy benefits of $46,642, tort damages for economic loss and emotional distress of $250,000, damages for attorney fees and costs in the amount of $28,199 and interest on the policy benefits of $10,242.25 for a total award of $335,083. Old Republic appeals from that portion of the judgment which awards damages for breach of the covenant of good faith and fair dealing. Old Republic does not challenge the determination that it breached the insurance policy.

## DISCUSSION

Old Republic opines there is no substantial evidence to support the judgment that it breached the covenant of good faith and fair dealing implied in the policy. Our review begins and ends with our determination of whether there is any credible evidence which could support the judgment. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 921-922 [148 Cal.Rptr. 389, 582 P.2d 980].) We may not weigh the evidence or consider the credibility of witnesses. We must indulge every legitimate inference

from the evidence in plaintiff's favor and accept as true any reasonable evidence in favor of plaintiff, disregarding conflicting evidence. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) One credible witness may constitute substantial evidence to support the judgment. (Evid. Code, § 411; *Kearl* v. *Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1052 [236 Cal.Rptr. 526].)

■ We must determine whether there is any credible evidence from which a jury could find that Old Republic did not act reasonably in considering the claim for policy benefits.

■ Insureds seek protection against calamity and purchase insurance to buy peace of mind and security. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819 [169 Cal.Rptr. 691, 620 P.2d 141].) The insurer has a duty to protect the insured's interests as if it were its own, and it may not deny a claim without thoroughly investigating it. (*Id.* at pp. 818-820.)

A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim. If an insurer unreasonably refuses a claim, it is liable for breach of the covenant of good faith and fair dealing inherent in every insurance policy. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at pp. 924-925; *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1045-1047 [200 Cal.Rptr. 732].)

An insurer must liberally construe claim forms and the policy in favor of coverage; exclusions are strictly interpreted against the insurer. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) **(1c)** The instant policy states, in pertinent part, that "[t]his policy will cover loss from an accident (except as defined herein) . . . ." The term "accident" is not defined by the policy. The policy states, in pertinent part, that "if an injury suffered by the insured . . . shall result in any of the specified losses described in the Schedule of Benefits within ninety days after the date of the accident causing such injury, the Company will pay the amount determined from the Schedule of Benefits."

The policy's schedule of benefits provides for the "Full Amount of Benefit Payable for: Loss of Life." Under its general provisions, the policy provides that "[i]ndemnities payable under this policy shall be paid immediately upon receipt of due written proof of such loss."

Under exclusions, which appear at the end of the policy in smaller type, the policy states, in pertinent part, that it does not cover any loss caused by

or resulting from: . . . D. [an] accident occurring while you are operating, learning to operate or performing duties as a member of the crew of any aircraft; or E. bodily or mental infirmity or illness or disease of any kind . . . ."

Under the policy, if an insured suffers an injury in an accident which results in death, except from an accident while crewing a plane, the policy is immediately payable. There is no exclusion of coverage for an illness or disease which causes an accident which results in a covered loss.

In this case, it does not matter that Mariscal ultimately died because of heart failure so long as the heart failure resulted from the accident. The cause of the accident is irrelevant. Coverage applies because death resulted from injuries incurred in the accident.

The issue here is whether Old Republic considered all the information reasonably available to it at the time it denied the claim, and whether that information provided a basis for coverage. Old Republic had a duty to thoroughly investigate the circumstances to determine whether the accident was a factor causing his death. (See *Egan* v. *Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at pp. 817, 819.) An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing.

Old Republic asserts that it did not breach the covenant of good faith and fair dealing because it obtained every writing in existence setting forth the insured's cause of death. It argues these writings reflect that the cause of death was the insured's heart failure and not the injuries he sustained in the automobile accident.

Old Republic did not fulfill its duty to obtain the readily available statements of all the percipient witnesses. The evidence of witnesses at the accident scene strongly suggests that Mariscal did not suffer a heart attack before the accident. Old Republic was aware that no one knew what caused the accident; the hospital discharge summary so stated. Nonetheless, Old Republic never discussed the matter with Doctor Diaz, paramedic Pence, Hughes, Anderson or Chapin during the time it investigated the accident.

Old Republic argues that it did not bother to call Doctor Diaz to clarify the meaning of his words because doctors are notoriously difficult to contact by telephone. This universal truth is not a defense to breach of the covenant of good faith and fair dealing. (See especially *McCormick* v. *Sentinel Life Ins. Co.*, *supra*, 153 Cal.App.3d at p. 1047.) Rybicki did not understand medical

terms or conditions and Old Republic did not consult with its own doctor. Claims representatives Barbara Paull and Harold Cox, a former claims manager at another company, testified that Old Republic ignored evidence which supported coverage and did not fulfill its duty to investigate further.

At the time it denied the claim, the information available to Old Republic showed that Mariscal died as a result of complications caused by the head injuries he suffered in the automobile accident. The hospital discharge summary lists the accident and brain contusions as the first two diagnoses. Even the death certificate and the claim form indicated that brain trauma due to the accident contributed to Mariscal's death.

At trial, Doctor Diaz explained that when Mariscal's head severely struck the windshield of his pickup truck, his brain cells swelled, compressing its blood vessels. During the first few minutes after such trauma to the head, one's body normally does not react. This explains Mariscal's alert state immediately after the accident. Later, his brain gradually received less oxygen and the areas of the brain-controlling breathing, blood pressure and heart rhythm stopped functioning. These events eventually caused ventricular fibrillation and Mariscal's death. Doctor Kulick, a board certified expert in internal medicine and cardiovascular disease, concluded from his review of the claims file that Mariscal died as a result of the accident.

Doctor Diaz testified it is routine medical practice for a physician to identify the immediate cause of death on the death certificate. Instead of considering all the evidence available to it with a view towards coverage, Old Republic relied on a short phrase in the death certificate which stated that the immediate cause of death was heart failure.

Old Republic also urges that because Doctor Diaz's testimony "contradicted" his earlier written statements on the insurance claim and death certificate, it should not have been found in bad faith. Credibility lies within the sound determination of the trier of fact. (*Campbell* v. *General Motors Corp.*, *supra*, 32 Cal.3d at p. 118.) Moreover, Doctor Diaz's testimony was not truly contradictory to his previous written statements. He testified that he answered the questions on the forms by stating the immediate cause of death. He explained that it would have been more accurate to state that the cardiopulmonary arrest ultimately occurred because of the accident.

*Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689], cited by Old Republic, defines proximate cause to be the event which "sets in progress the chain of events leading directly to death, or if it is the prime

or moving cause." (See also *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 403 [257 Cal.Rptr. 292, 770 P.2d 704].)

Here, there is substantial evidence that the prime event which set in progress the chain of events leading to Mariscal's death was the accident. The evidence available to Old Republic establishes it could not reasonably deny the claim on the ground that Mariscal died as a result of illness.

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Yegan, J., concurred.

On March 28, 1996, the opinion was modified to read as printed above.