ESTATE OF Gary W. PARKER, by and through the Executor, J. Bruce PARKER; Estate of Harry C. Mullikin, by and through the Executor, J. Bruce Parker; and Janet P. Booth, Plaintiffs,

v.

AIG LIFE INSURANCE, a Pennsylvania corporation, Defendant.

No. CV 02–8101DSFRZX.

United States District Court, C.D. California.

March 31, 2004.

David A. Gauntlett, M. Catherine Reid, Gauntlett & Associates, Irvine, CA, for Estate of Gary W. Parker, et al.

Richard P. Dieffenbach, Law Offices of Inlow H. Campbell, Los Angeles, CA, for AIG Life Ins.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIG LIFE INSURANCE'S MOTION FOR SUMMARY JUDGMENT

FISCHER, District Judge.

## I. PROCEDURAL HISTORY

This action arises out of a claim for life insurance benefits denied to the estates of Dr. Gary Parker ("Parker") and Dr. Harry Mullikin ("Mullikin") (collectively, "decedents"). The Motion for Summary Judgment ("Motion"), Statement of Uncontroverted Facts and Conclusions of Law ("SUF") and Declaration of Richard P. Dieffenbach were filed December 31, 2003.

The Amended Notice of Errata and Second Declaration of Richard P. Dieffenbach were filed January 12, 2004. The Opposition, Statement of Genuine Issues ("Genuine Issues"), Request for Judicial Notice, Declaration of J. Bruce Parker and Objection to Declaration of Richard P. Dieffenbach were filed March 15, 2004. The Reply was untimely filed March 25, 2004. The Court heard oral argument on March 29, 2004. For the reasons discussed below, the Court GRANTS in part and DENIES in part the Motion for Summary Judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is *entitled to a judgment as a matter of law.*" FED. R. CIV. P. 56(c) (emphasis added). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. FED. R. CIV. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## III. FACTUAL BACKGROUND

Decedents Parker and Mullikin were insured under Life Insurance Policy G–998–116028 and Life Insurance Policy G–998–116027, respectively (collectively, "policies"). SUF ¶¶ 1, 2.[1] Both policies were issued by defendant AIG and were in effect during March and April 1999. SUF ¶¶ 1, 2. Both policies provided benefit coverage for deaths for specific and limited hazards, including Hazard III, Freeway Coverage, and Hazard IV, Felonious Assault. SUF ¶ 3.

Death benefits were payable under the Freeway Coverage provision only if the death resulted from an accident on a "freeway," defined in the policies as "an express highway with all of the following characteristics: (1) There are separate roadways for traffic in opposite direction and each Roadway has two or more lanes; (2) Crossroads are separated in elevation from the highway, there is no cross-traffic at the grade; (3) There is no access from the highway to the roadside, except at designated entrance and exit roadways." SUF ¶ 4. According to the Freeway Coverage

provision, an insured is no longer on the "freeway" as defined "when he or she: (1) reaches the first stop light or stop sign, or leaves the off ramp; or (2) is within 100 feet of the first crossroad after leaving a freeway; or (3) reaches the end of a Freeway as designated by a sign or marker." SUF ¶ 5.

The policies also afforded benefit coverage to an insured for death by "felonious assault," defined as "a physical attack by another person resulting in bodily harm to the Insured. The attack must be considered a felony or misdemeanor in the jurisdiction in which it occurs." SUF ¶ 8.

The parties agree decedents were killed as the result of injuries sustained in a vehicular collision occurring on the Central Highway near Camagüey, Cuba on March 29, 1999. Genuine Issues ¶ 11. Plaintiffs filed a claim with defendant, arguing decedents were killed on a freeway as defined in the policies since the portion of the Central Highway where the collision occurred is a divided highway, from which, they have argued, it is reasonable to infer two or more lanes run in each direction. *See* Genuine Issues ¶¶ 13–15.

Plaintiffs also claimed decedents were victims of a carjacking and therefore entitled to benefits under the Felonious Assault Coverage provision. SUF ¶ 7. J. Bruce Parker, decedent Parker's brother, has testified that Parker (in an apparent effort to establish a custom or habit) never allowed anyone to drive a car that he rented for which he was the designated driver. *See* Genuine Issues ¶¶ 18–21. Because Parker was not driving the rental vehicle at the time of the collision, Genuine Issues ¶ 22, and allegedly would not have voluntarily permitted another to drive it,

---

1. The facts in this Order are taken from Defendant's SUF and Plaintiffs' Genuine Issues. The Court, after considering the alleged support for the facts and the alleged evidence rebutting the facts, finds these facts to be uncontroverted, except where otherwise indicated.

Genuine Issues ¶ 23, plaintiffs argue he must have been the victim of a felonious assault. Genuine Issues ¶ 29.

Based on an analysis of the scene of the accident by a representative of the Swiss Embassy in Havana (not provided to the Court by defendant and not authenticated), defendant determined that the accident did not occur on a freeway as defined in the policies. SUF ¶ 6. By letter dated May 30, 2000, defendant denied plaintiffs' claims on this basis. SUF ¶ 9. Defendant has also insisted its investigation revealed no evidence of felonious assault. *Id.* (While this information provided by the Swiss Embassy may establish AIG's investigation, it is not admissible evidence for the purpose for which it is submitted here.)

On October 18, 2002, plaintiffs filed suit against AIG for failure to pay benefits owed under either the Freeway Coverage or the Felonious Assault Coverage provisions of the policies, alleging claims for: (1) declaratory relief for benefits owed beneficiaries under the contracts; and (2) breach of insurance contract for failure to pay benefits owed under the policies.

Defendant now asks this Court to adjudicate this matter summarily in its favor, insisting plaintiffs have failed to raise a triable issue of fact as to whether: (1) the accident occurred on a freeway, as that term is defined in the policies; and (2) the decedents were victims of a felonious assault. Defendant contends that, despite expressly being asked to do so, plaintiffs have provided no evidence to support any basis for their claims and that therefore the claims were properly denied. SUF ¶ 10.

## IV. DISCUSSION

### A. *INSURER'S DUTY TO INVESTIGATE*

■ First party insurers have a good faith duty to investigate thoroughly an insured's claim. *Egan v. Mutual Omaha Ins., Co.,* 24 Cal.3d 809, 819, 169 Cal.Rptr. 691, 620 P.2d 141 (1979) ("[I]t is essential that an insurer fully inquire into possible bases that might support the insured's claim .... [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial."). This duty to investigate applies outside the bad faith context, as well. *Everett Associates, Inc. v. Transcontinental Ins. Co.,* 159 F.Supp.2d 1196, 1201 (N.D.Cal.2001) (an insurance contract imposes on the insurer, *inter alia,* "the duty to make immediate inquiry into the facts of any serious accident as soon as practicable after its occurrence ...."). An insurer owes its insured the same duty of investigation that is implied into the insurance contract via the covenant of good faith and fair dealing, separate and apart from such covenant. *Id.* 1202–04 (breach of duty to investigate defined in *Egan* can support claims for both bad faith and breach of insurance contract).

■ A first party insurer owes a fiduciary duty to its insured, requiring it to protect the insured's interests as if it were its own. "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interest above that of its insured." *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal.App.4th 1617, 1620, 50 Cal.Rptr.2d 224 (1996). An insurer who "ignores evidence available to it" may be found to have acted "unreasonably" in breach of its fiduciary duty to its insured. *Id.* at 1623, 50 Cal. Rptr.2d 224 (citations omitted); *Hangarter v. Paul Revere Life Ins. Co.,* 236 F.Supp.2d 1069, 1083 (N.D.Cal.2002) (insurer bias demonstrated, *inter alia,* by its failure to conduct a thorough investigation).

California Insurance Code § 790.03, subdivision (h)(3), has codified the duty to investigate, requiring insurers "to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies." Although § 790.03(h)(3) provides no private right of action for damages, it nevertheless imposes a statutory duty upon an insurer properly to investigate an insured's or beneficiary's claim. Section 790.03 imposes the same duty to investigate thoroughly plaintiffs' claims in this breach of contract action as the *Egan* court discussed in the bad faith context. *McMillin Scripps North Partnership v. Royal Ins. Co.*, 19 Cal.App.4th 1215, 1221, 23 Cal. Rptr.2d 243 (1993).

■ The duty to investigate possible bases for an insured's claim includes the duty to investigate grounds for denying the claim. *McLaughlin v. Connecticut Gen. Life Ins., Co.*, 565 F.Supp. 434, 452 (N.D.Cal.1983). When resting its basis for denial of a claim on exclusion, an insurer must point to an exclusionary clause of the insurance contract that is "conspicuous, plain and clear." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648; 3 Cal. Rptr.3d 228, 73 P.3d 1205 (2003). This is particularly true "when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." *Id.* Thus, in determining whether to exclude a claim, the Court must interpret exclusionary clauses "narrowly against the insurer." *Id.* An insurer must clearly articulate its reasons for denying coverage based on the exclusion and demonstrate that its interpretation is the most reasonable interpretation of the exclusionary clause. *Fire Ins. Exchange v. Superior Court*, 116 Cal. App.4th 446, 10 Cal.Rptr.3d 617, 2004 WL 377359 (Cal.App. 2 Dist.2004).

## B. *FREEWAY COVERAGE PROVISION*

■ Plaintiffs have demonstrated that: (1) decedents are dead; and (2) decedents were killed on the Central Highway near Camagüey, Cuba. As both sides acknowledge, the crucial question is thus whether the Central Highway is a "freeway," as that term is defined in the policies.

Defendant argues no reasonable trier of fact could find it liable for the $100,000 benefits payable under the Freeway Coverage provision of the policies since an investigation undertaken by defendant revealed that the deaths did not occur on a "freeway," as defined. In support of this contention, defendant has submitted the following evidence: (1) the policy of Parker; (2) the policy of Mullikin; (3) a letter dated January 20, 2000 from AIG Claims Examiner Alice O'Reilly ("O'Reilly") stating that International Claim Specialists, Inc. would obtain verification from the Embassy of Switzerland of the location of the accident for Mullikin's claim; (4) a March 22, 2000 letter awaiting confirmation of the accident location from CS Claims Group, Inc. regarding Mullikin's claim; (5) a letter dated May 30, 2000, denying benefits to the beneficiaries of Mullikin because the accident did not fall within the Freeway Coverage provision of his AIG policy; and (6) a letter dated May 30, 2000, denying benefits to the beneficiaries of Parker because the accident did not fall within the Freeway Coverage provision of his AIG policy.

In reviewing the aforementioned evidence, the only proof of any investigation conducted by the defendant is a passage in the May 30, 2000 denial letters, which states:

> According to James Doran at the Swiss Embassy the site of the accident is at the opposite end of the island from Havana. It is observed that such high-

ways, as described in our policy's Hazard provision, are rare in Cuba. Cuban highway conditions are in general not up to the U.S. and European standards. A map of Cuba shows roads which are classified as "highway," which originates [sic] in Havana but ends at a city well north of Sibarnicu, where the accident occurred. Photographs of the accident show the Central Highway is not a Freeway as described in the Policy. Therefore, no benefits are payable as the location of the accident does not meet the definition of "Freeway" as described in the Policy.

Motion, Ex. 5.

While an insurer may enlist the aid of third parties in conducting an investigation of an insured's claims, *Guebara v. Allstate Insurance Co.*, 237 F.3d 987, 996 (9th Cir.2001), it must honestly select reasonable experts when it does so. *Hangarter v. Paul Revere Life Ins. Co.*, 236 F.Supp.2d at 1083. The difficulties inherent in investigating a claim in Cuba do not eradicate defendant's affirmative duty to search diligently for evidence supporting plaintiffs' claim. *See, e.g., Mariscal*, 42 Cal.App.4th at 1624, 50 Cal.Rptr.2d 224 ("Old Republic argues that it did not bother to call Doctor Diaz to clarify the meaning of his words because doctors are notoriously difficult to contact by telephone. This universal truth is not a defense ...."). Thus, while, contrary to plaintiffs' assertions, defendant need not have traveled to Cuba itself to investigate the accident scene in order to satisfy its affirmative duty to investigate plaintiffs'

claim that the Central Highway is a freeway, it needed to present some reasonable basis for its denial. This it has failed to do.

First, although the May 30, 2000 denial letters refer to photographs of the Central Highway, defendant has failed properly to submit these photographs for the Court's consideration.[2] Moreover, despite reference to an investigation of the accident scene by a representative of the Swiss Embassy, SUF ¶ 6, defendant has submitted no sworn declaration from any member of the Swiss Embassy in Havana attesting to the Embassy's evaluation of the accident scene. Rather, in support of its denial, defendant merely paraphrases the alleged statements of James Doran ("Doran") of the Swiss Embassy that freeways, as defined in the policies, are rare in Cuba.[3] Assuming *arguendo* that Doran's statements are admissible, defendant has presented no evidence that Swiss Embassy personnel were in any position to evaluate whether the Central Highway is a "freeway" within the meaning of the policies. Nor does defendant give any indication that any member of the Swiss Embassy in Havana visited the accident scene, determined the Central Highway is a freeway or evaluated the accident in the context of the policies.

In *Hangarter*, 236 F.Supp.2d at 1086, the court found an insurer acted in bad faith in denying a claim where its employee-claim investigators "neither knew nor used the California definition of total disability." Similar to *Hangarter*, defendant

---

**2.** Plaintiffs have submitted photocopies of photographs purportedly of the Central Highway taken by Fortis Insurance Company, another insurance company with which Mullikin had a policy. J. Bruce Parker Dec. ¶¶ 10–11. These photographs are not properly authenticated and, pursuant to Federal Rules of Evidence 1002–03, will not be considered by the Court in deciding this Motion.

**3.** Defendant has submitted no properly authenticated evidence, such as a sworn declaration, of the Swiss Embassy representative's statements referenced in the May 30, 2000 denial letters. These statements are therefore hearsay and are not admissible for the purposes of this Motion, pursuant to Federal Rule of Evidence 901.

here evaluated plaintiffs' claims without using a critical definition in the policies—i.e., it relied on the unsubstantiated assertions of a Swiss Embassy employee, absent any evidence the employee understood the definition of "freeway" in the policies. As in *Hangarter*, defendant here failed to provide its "expert" with crucial foundational information, basing its denial decision on the remarks of a Swiss Embassy employee who never viewed the accident scene or had an understanding of the policies' definition of freeway. An insured's reliance on unqualified experts is evidence of an improper investigation. *Id.; see also Guebara*, 237 F.3d at 995–96 (first party insurer's investigation of claim must be unbiased and failure to conduct thorough investigation or the dishonest selection of impartial experts shows biased investigation).

Defendant also fails to present any evidence it interviewed witnesses who might have had valuable information about the circumstances of the accident or whether the Central Highway was a freeway. *See e.g., Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 381 (C.D.Cal.1995) ("An insurance company's duty to conduct a thorough investigation includes the duty to interview witnesses with significant information."). As mentioned previously, defendant's reliance on December 7, 1999 photocopies of photographs of the accident scene taken by a third-party in its investigation of a different claim and its own denial letters do not prove that it conducted a thorough and unbiased investigation of plaintiffs' claims. *Mariscal*, 42 Cal. App.4th at 1624, 50 Cal.Rptr.2d 224 (reliance on available writings insufficient basis to deny a claim where insurer failed to interview witnesses or discuss matter with

a doctor). Nor do they prove the Central Highway is a freeway.

Finally, defendant points to the May 30, 2000 denial letters in which it asked plaintiffs to produce any evidence to corroborate their claims. However, as defendant knew that the fatal collision occurred on a "highway" and some highways are freeways within the broader, more common definition of freeway,[4] absent affirmative evidence to the contrary, a reasonable factfinder could find that the Central Highway may well be a freeway within the policies' definition, as well. In other words, defendant has failed to prove that the Central Highway falls within the exclusion created by the Freeway Coverage provision. Defendant's bald assertion that plaintiffs have not proven the Central Highway is a freeway is insufficient to sustain its Motion. Defendant has not met its initial burden under *Celotex*.

## C. *FELONIOUS ASSAULT PROVISION*

Under the Felonious Assault Coverage provisions of the policies, a $50,000 death benefit would be payable to the beneficiaries of the policies had Parker or Mullikin died as the result of a felonious assault. Defendant has shown that, at least initially, no evidence of any criminal conduct exists in the record. Rather, in support of their contention, plaintiffs have only submitted the declaration of J. Bruce Parker, who insists that, because Parker never allowed anyone to drive cars registered in his name and would therefore never have allowed a Cuban national to drive a car he had rented, he must have been the victim of a carjacking. J. Bruce Parker Dec. ¶¶ 4–7, 14–15. Assuming *arguendo* that this declaration is sufficient to

---

4. Merriam–Webster Dictionary, for example, defines a "freeway" as a "toll-free highway." *See also* American Heritage Dictionary (defining a "freeway" as "a highway without tolls").

prove Parker had a custom and habit of never permitting others to drive cars registered to him, plaintiffs have failed to produce any evidence to substantiate J. Bruce Parker's assertion that simply because Parker was not driving the vehicle he had rented, he must have been the victim of a carjacking. Conclusory and speculative testimony is insufficient to raise genuine issues of fact to defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Moreover, the policies clearly provide that to recover under the Felonious Assault Coverage provision "[t]he attack must be considered a felony or misdemeanor in the jurisdiction in which it occurs." SUF, Exs. I, 2. J. Bruce Parker's attestation that it is his " understanding that Cuban law forbids Cuban nationals from driving rental cars rented by tourists," J. Bruce Parker Dec. ¶ 9, is an insufficient statement of Cuban law on felonious assault and does not warrant consideration by this Court.

As the moving party for this Motion, defendant need only point to the utter absence of evidence to satisfy its burden for summary judgment. Because plaintiffs have failed to produce any evidence to suggest that Parker did not willingly allow someone else to drive his rental car or that it is indeed a felony or a misdemeanor under Cuban law for a Cuban national drive a rental car, their claims for benefits owed under the Felonious Assault Coverage provision must fail as a matter of law.

## V. CONCLUSION

For the reasons previously stated, defendants' Motion for Summary Judgment is GRANTED with respect to the claim for coverage under the Felonious Assault Coverage provision and DENIED with respect to the claim for coverage under the Freeway Coverage provision.

IT IS SO ORDERED.