Filed 10/7/20  Smith v. SATRA CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CECILIA SMITH, | |
| Plaintiff and Appellant, | G058282 |
| v. | (Super. Ct. No. 30-2017-00902978) |
| SATRA, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Reversed and remanded with directions.

Gusdorff Law and Janet Gusdorff; Ramey Law, Christa Ramey and John Ramey for Plaintiff and Appellant.

Tyson & Mendes, Robert F. Tyson, Jr., Mina Miserlis and Reece Roman for Defendant and Respondent.

\*       \*       \*

Defendant SATRA filed a motion to quash service of summons, after being named in this action as a Doe defendant. When the motion was filed, plaintiff Cecilia Smith was represented by counsel from two California law firms and counsel from Texas admitted pro hac vice. About a month before plaintiff's opposition was due, one of the California law firms disassociated from the case. Its notice of disassociation stated that counsel from the other California firm and the Texas firm would continue representing plaintiff. Despite this language, the firm's disassociation automatically triggered the disassociation of her Texas counsel. Plaintiff and her remaining counsel were unaware that this had occurred and believed the Texas attorney was still associated in this case.

This mistaken belief was uncovered when plaintiff's Texas counsel tried to file an opposition to SATRA's motion to quash and had the filing rejected. Plaintiff's remaining California counsel was out of the country and unreachable and unable to assist with the filing. Due to these circumstances, plaintiff was unable to file her opposition until three days before the hearing. She requested that the trial court exercise its discretion and consider the late opposition under Code of Civil Procedure section 473, subdivision (b).[1] Her request was denied, and the trial court granted the unopposed motion. Plaintiff appeals, arguing she should be excused for filing a late opposition.

We agree. The severe tardiness of the filing was caused by plaintiff's mistaken belief that her Texas counsel was still associated in this matter after only one of the California law firms disassociated. This mistaken belief was reasonable. There is no statute, rule, or other authority that would have put plaintiff on notice that the disassociation of one of her California attorneys would automatically disassociate her Texas counsel. And it is also unclear under the law whether the trial court's disassociation of plaintiff's Texas counsel was even proper. Further, after learning of her mistaken belief, plaintiff diligently attempted to correct the error, and there is no

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

evidence that SATRA suffered any meaningful prejudice due to the late filing of the opposition. Given the strong policy in favor of deciding legal issues on their merits, we reverse the trial court's order and remand this case as directed with instructions to reevaluate SATRA's motion in light of plaintiff's opposition, including plaintiff's request for a continuance to conduct jurisdictional discovery.

I

FACTS AND PROCEDURAL HISTORY

This lawsuit arises from a horse-riding lesson in San Juan Capistrano. During the lesson, plaintiff was wearing a safety vest designed to protect the user from injuries caused by a fall. When the vest is triggered, it emits a loud noise. Plaintiff alleges that her safety vest malfunctioned during her lesson. Specifically, the vest's trigger system inadvertently activated. The vest began to blare, startling the horse plaintiff was riding and causing it to jump into the air. Plaintiff was thrown to the ground and suffered serious bodily injury.

Plaintiff filed this lawsuit in February 2017 and then filed an amended complaint (complaint) in June 2017. The complaint sought to recover damages relating to plaintiff's injuries from the horse-riding lesson. Several parties involved in the lesson were named as defendants, as was the manufacturer of the safety vest. Among other things, plaintiff alleged the vest suffered from various design flaws, that the trigger mechanism for the vest had been improperly tested, and that the vest contained inadequate warnings. Based on these allegations, the complaint set forth products liability and negligence claims.

In January 2019, plaintiff amended the complaint to replace one of the Doe defendants with defendant SATRA, whom she contends tested the vest's decibel levels and triggering mechanism. On May 16, 2019, SATRA filed a motion to quash service of summons for lack of personal jurisdiction. The hearing on the motion was set for July

3

12, 2019.  When SATRA filed its motion to quash, plaintiff was represented by counsel from three different law firms.  The first two, Alderlaw, PC and Carrazco Law, APC, are California firms.  The third, Elliott & Ritch, LLP, is located in Texas, and counsel from this firm was admitted pro hac vice.  On May 31, 2019, Alderlaw disassociated from this case.  Its notice of disassociation stated that "Angel Carrazco, Esq. of CARRAZCO LAW APC, and Joseph E. Ritch, Esq. of ELLIOTT & RITCH, LLP will continue their representation of Plaintiff . . . ."  In spite of this language, the trial court automatically terminated Mr. Ritch's pro hac vice status and disassociated Elliott & Ritch from the case after Alderlaw's disassociation was filed.  Neither plaintiff nor her counsel received any notice of this event, nor were they aware of it.  We found nothing in the record that indicates the trial court sent notice of its termination of the Texas firm's pro hac vice status to the parties.

The record is unclear as to when, but at some time prior to July 1, 2019, plaintiff retained Ramey Law, PC to replace Carrazco Law as cocounsel to Elliott & Ritch.  On Monday, July 1, 2019, Elliott & Ritch attempted to file three documents that were all rejected by the trial court:  (1) a notice of association for Ramey Law; (2) plaintiff's opposition to the motion to quash; and (3) a case management statement.  The court's rejection notice for the notice of association stated, "Elliott & Ritch, LLP is not an attorney of record for Plaintiff.  Notice of Disassociation filed on 05/31/2019 disassociated Alderlaw, PC but did not associate Elliott & Ritch, LLP.  All association of attorney must be done by filing an association of attorney document.  Currently, only Carrazco Law, APC is the attorney of record."  Similarly, the rejection notice for the opposition stated, "Association of attorney must list current attorney of record and associating attorney.  Attorneys listed do not match attorney of record."

After the court rejected the filings, Christa Ramey of Ramey Law attempted to contact Mr. Carrazco to associate Ramey Law into the case, but he was out of the

4

country and unreachable. Although plaintiff was unable to file the opposition, she served SATRA with a copy of it on July 1.

On July 3, 2019, Mr. Ritch and Ms. Ramey contacted SATRA's counsel to explain why plaintiff's opposition had not yet been filed. They also requested a continuance of the hearing date to allow Ramey Law to substitute into this case and to file the opposition. A continuance, they suggested, would eliminate any prejudice to SATRA caused by the late filing of the opposition. SATRA's counsel refused.

Ms. Ramey eventually reached Mr. Carrazco on July 8, 2019, and she filed a substitution of attorney to replace Carrazco Law with Ramey Law that same day. Plaintiff filed her opposition to the motion to quash the next day. The opposition and supporting evidence were identical to the papers served on SATRA on July 1, except for two changes. First, there were changes to the counsel listed on the caption page. Second, the July 9 opposition was accompanied by a declaration from Ms. Ramey, which requested that the court permit the late filing under section 473, subdivision (b). In addition to challenging the merits of the motion, the opposition also requested a continuation of the hearing to allow for jurisdictional discovery.

SATRA also filed its reply on July 9.

At the hearing on July 12, 2019, the court heard argument from the parties as to whether it should consider plaintiff's untimely opposition. Plaintiff also made an oral motion to continue the hearing. After argument, the trial court declined to consider plaintiff's opposition and denied plaintiff's oral motion. The trial court then granted the unopposed motion to quash, finding that "the uncontroverted evidence reflect[ed] that SATRA is not subject to general or specific jurisdiction in California."

Plaintiff appeals the trial court's order granting SATRA's motion to quash service of summons. (§ 904.1.) Primarily, plaintiff contends the trial court erred by failing to consider her opposition under section 473, subdivision (b), and by denying her request for a continuance to conduct jurisdictional discovery.

5

II

DISCUSSION

*A. Section 473, subdivision (b)*

Under section 473, subdivision (b), "[t]he trial court has discretion . . . on a showing of 'mistake, inadvertence, surprise or excusable neglect' to grant relief from a judgment, dismissal or other order based on its evaluation of the nature of the mistake or error alleged and the justification proffered for the conduct that occurred. 'The general underlying purpose of section 473(b) is to promote the determination of actions on their merits.'" (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928.)

"[A]n attorney's failure to meet a procedural deadline is a proper subject of section 473 relief." (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229 (*Henderson*).) And contrary to SATRA's unsupported assertion, a noticed motion is not required to seek discretionary relief under section 473 for a missed opposition deadline. Indeed, courts may grant relief from an untimely filing under section 473 even when such relief is not requested by the offending party. (See, e.g., *Kapitanski v. Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 30-33 [trial court erred by failing to grant discretionary relief from an untimely opposition under section 473 even though such relief was not requested].)

In considering whether to grant relief under section 473, subdivision (b), courts consider (1) whether the moving party's mistake is excusable, (2) whether the moving party acted diligently, and (3) whether the opposing party will suffer any prejudice. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 (*Zamora*).) "Where the mistake is excusable and the party seeking relief has been diligent, courts have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue." (*Ibid*.) "'It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of

6

legal controversies upon their merits.' [Citation.] Thus, 'the provisions of section 473 of the Code of Civil Procedure are to be liberally construed and sound policy favors the determination of actions on their merits.'" (*Id*. at pp. 255-256.)

A trial court's order denying discretionary relief under section 473 is reviewed for an abuse of discretion. (*Kapitanski v. Von's Grocery Co.*, *supra*, 146 Cal.App.3d at pp. 30-31.) But the court's discretion must be balanced with the policy favoring disposition of legal controversies on their merits. As this court has previously stated, "'the trial court's discretion is not unlimited and must be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' [Citation.] The law strongly favors trial and disposition on the merits. Therefore, any doubts in applying section 473 must be resolved in favor of the party seeking relief. When the moving party promptly seeks relief and there is no prejudice to the opposing party, very slight evidence is required to justify relief. We will more carefully scrutinize an order denying relief than one which permits a trial on the merits." (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1343.) "Reversal of an order denying relief is appropriate where the effect of the order is to 'defeat, rather than to advance the ends of justice.'" (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 236 (*Elston*), superseded by statute on another basis as described in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64-65.)

Here, the strong policy favoring disposition on the merits applies. Because the trial court declined to consider plaintiff's opposition, the trial court granted SATRA's motion to quash without considering any contrary evidence that might support denying the motion or granting jurisdictional discovery. A decision based on one-side arguments and evidence is not one made on the merits. (See Black's Law Dict. (11th ed. 2019) p. 1373, col. 2 [defining "on the merits"].) Moreover, due to the trial court's ruling,

7

plaintiff can no longer pursue any claims against SATRA in California.[2]  (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997-999.)  With this policy mind, we review the applicable factors below.

### 1. *Excusable mistake*

"In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances' might have made the same error."'  [Citation.]  In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.'  [Citation.]  'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable.  To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.'"  (*Zamora*, *supra*, 28 Cal.4th at p. 258.)

For example, an attorney's failure to calendar a deadline is an excusable error because it "is a clerical type mistake, not one involving professional skill.  [Citation.]  It is a mistake '"anyone could have made"' [citation], including a person with no special training or skill."  (*Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1134-1135 [reversing the decision of the trial court].)

Similarly, in *Elston*, the plaintiffs failed to timely respond to one of the defendant's requests for admissions because their attorney's staff had lost them.  (*Elston*, *supra*, 38 Cal.3d at pp. 231, 234.)  The requests were deemed admitted, and the trial court denied plaintiffs' motion for relief under section 473.  All the defendants were

---

[2]  SATRA purports to be a British company that conducts its testing in the United Kingdom.  If the trial court's order stands, it seems unlikely that plaintiff would pursue any claims against SATRA in the United Kingdom given the scope of this case.  Nor does the record show any other potential forum for her claims.  Thus, practically speaking, it is as if judgment has been granted in favor of SATRA.

subsequently granted summary judgment based on the deemed admissions. (*Id*. at pp. 231-232.) Our Supreme Court held that the trial court erred by denying the section 473 motion: "Where, as here, the trial court denies the motion for relief from default, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. [Citation.] Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails. [Citation.] Doubts are resolved in favor of the application for relief from default [citation], and reversal of an order denying relief results [citation]. Reversal is particularly appropriate where relieving the default will not seriously prejudice the opposing party." (*Elston*, *supra*, 38 Cal.3d at p. 235.)

Here, plaintiff and her counsel mistakenly believed that Elliott & Ritch were still associated as counsel after Alderlaw withdrew. This mistaken belief was reasonable. There is no dispute that prior to Alderlaw's disassociation, Mr. Ritch of Elliott & Ritch had been admitted pro hac vice and had been associated as plaintiff's counsel. It is also undisputed that Alderlaw's notice of disassociation stated that Mr. Carrazco, a member of the California bar, and Mr. Ritch would continue representing plaintiff. Following Alderlaw's disassociation, plaintiff received no notice that Mr. Ritch has been disassociated. Moreover, SATRA has not cited any statute, rule, or other authority that would have reasonably put plaintiff or her counsel on notice that Alderlaw's dissociation would affect Mr. Ritch's pro hac vice status and disassociate him from the case. In fact, it is unclear whether the trial court's withdrawal of Mr. Ritch's pro hac vice admission was proper.[3]

Pro hac vice admission is governed by the California Rules of Court, rule 9.40. Under this rule, an out-of-state attorney "may in the discretion of such court be

_____

[3] On September 1, 2020, we requested that the parties submit briefs on whether there was any statute, rule, or other authority that would have put plaintiff on notice that Alderlaw's disassociation would automatically disassociate Elliott & Ritch. Both parties submitted letter briefs. SATRA also filed a motion to augment the record, in which it sought to augment the record with Joseph Ritch's pro hac vice application. That motion is granted.

9

permitted upon written application to appear as counsel *pro hac vice*, provided that an active licensee of the State Bar of California is associated as attorney of record." (Cal. Rules of Court, rule 9.40(a).) SATRA argues that Mr. Ritch's pro hac vice application identified Alderlaw as local counsel, not Mr. Carrazco. (See Cal. Rules of Court, rule 9.40(d)(6).) Based on this statement in the application, SATRA contends plaintiff and her counsel should have known that Alderlaw's dissociation would also revoke Mr. Ritch's pro hac vice status and disassociate him from the case. We are not persuaded.

To be clear, we need not decide whether the trial court properly disassociated Mr. Ritch following Alderlaw's withdrawal. Thus, we need not address plaintiff's argument that the automatic revocation of Mr. Ritch's pro hac vice status without notice was a violation of due process. Rather, we need only decide whether a reasonably prudent person would have believed that Mr. Ritch was still associated as plaintiff's counsel after Alderlaw disassociated from the case. (See *Zamora*, *supra*, 28 Cal.4th at p. 258.)

We think so. The applicable rule requires pro hac vice applications to identify the California attorney of record. (See Cal. Rules of Court, rule 9.40(d)(6).) Yet it does not explain how the dissociation of that California attorney affects the status of an attorney already admitted pro hac vice. It could reasonably be expected that an attorney would lose their pro hac vice status if *all* California attorneys disassociated as counsel for a shared client. This would violate the portion of the rule requiring "an active licensee of the State Bar of California [to be] associated as attorney of record." (Cal. Rules of Court, rule 9.40(a).) But that is not the case here. Though Alderlaw dissociated from the case, Mr. Carrazco remained counsel of record. Since a member of the State Bar was still associated as plaintiff's counsel, Mr. Ritch appeared to be in compliance with the requirements for pro hac vice admission. (See Cal. Rules of Court, rule 9.40(a).) Nothing in rule 9.40 suggests that he was required to file a new pro hac vice application, or take any other step, to retain his pro hac vice status.

10

Indeed, nothing in the applicable rule explains how an attorney loses their pro hac vice status once admitted. (See Cal. Rules of Court, rule 9.40.) We are aware of only one published case addressing a trial court's ability to revoke an attorney's pro hac vice status, and it provides no guidance here. (See also *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1715-1716 [a trial court has "the authority to revoke an attorney's *pro hac vice* status when that attorney has engaged in conduct that would be sufficient to disqualify a California attorney"].) Assuming the trial court could revoke Mr. Ritch's pro hac vice status after Alderlaw disassociated, the rejection notice for the filings stated Alderlaw's notice of disassociation "disassociated Alderlaw, PC but did not associate Elliott & Ritch, LLP." But Elliott & Ritch was already associated in this matter and the notice of disassociation clearly stated that Mr. Carrazco and Mr. Ritch would remain plaintiff's counsel of record. It is unclear what more needed to be said in the notice of disassociation to have Mr. Ritch remain associated in this case.

In short, there is a reasonable dispute over whether Mr. Ritch was properly disassociated by the trial court. Given the circumstances, it was reasonable for plaintiff and her counsel to believe that Mr. Ritch was still associated in this case after Alderlaw's withdrawal.

Rather than addressing the mistaken belief identified above, the trial court focused on the fact that plaintiff had weeks to prepare the opposition and that plaintiff was represented by counsel at all times. But the specific cause of plaintiff's severely late filing was her mistaken belief that Mr. Ritch was still associated as counsel after Alderlaw withdrew. If not for this mistaken belief, plaintiff's opposition would have been filed only one court day late (discussed below). Nor does the fact that she was represented by multiple attorneys change our analysis. When a party is represented by multiple law firms it is not uncommon or unreasonable for counsel to divide work based on availability. Indeed, the division of tasks is one of the inherent advantages of having cocounsel in a given case. From the record, it appears that Mr. Ritch and Ms. Ramey

11

(prior to her formal association as counsel) were tasked with preparing and filing the opposition, without Mr. Carrazco's involvement. They had no reason to suspect that Mr. Ritch had been disassociated and that his filings would be rejected. As such, it was not unreasonable for Mr. Carrazco to be out of the country and unreachable during the relevant timeframe given the mistaken belief of plaintiff and her counsel that Mr. Ritch was still associated in this matter.

As noted above, SATRA correctly asserts that the opposition would still have been one court day late even if plaintiff had filed it on July 1.[4] However, it seems exceedingly likely, as plaintiff suggests, that the trial court would have considered the opposition in that context. During oral argument, the trial court expressed concern that the opposition had been filed after the tentative ruling had been issued. It also stated that because the opposition had been filed on 4:16 p.m., on July 9, it was "quite late" by the time it actually reached the courtroom. Similarly, the court's minute order highlights that the opposition was filed after the reply deadline. These concerns would not exist had the opposition been filed only one court day late. Further, had it been filed only one court day late, the trial court likely would have abused its discretion by declining to consider the opposition. Nothing in the record indicates that plaintiff had habitually made untimely filings. Nor is there any evidence of any meaningful prejudice to SATRA, as discussed below. (Cf. *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 161-162 [trial

---

[4] Nothing in the record explains why the opposition would have been filed one court day late. But plaintiff's reply brief states that plaintiff sought to replace Mr. Carrazco with Ms. Ramey around the time the opposition was due, which appears to have contributed to the delay in preparing the opposition.

12

court abused its discretion by granting the defendants' summary judgment motion because the plaintiff had filed her opposing separate statement one day late].)[5]

Finally, we are not persuaded by SATRA's comparison of this case to *Henderson*. In *Henderson*, the plaintiff submitted her opposition to the defendant's motion for summary judgment several days late. The trial court refused to consider the opposition and granted the defendants' unopposed motion. The plaintiff then sought discretionary relief under section 473, subdivision (b). (*Henderson*, *supra*, 187 Cal.App.4th at pp. 219-221.) The plaintiff's counsel filed a supporting declaration explaining that he had asked his paralegal to prepare the opposition. She was to provide a draft for his review on Friday, September 5, the same day she was to leave on a cruise, so the opposition could be filed by its Monday, September 8, deadline. On September 5, the attorney received a voicemail from the paralegal stating her computer had crashed and that she could not provide the opposition for his review. She stated that she would arrange for an attorney service to file the opposition on Monday. The paralegal then had issues transmitting the documents to the attorney service while she was on vacation, and the opposition was not timely filed. (*Id.* at pp. 222-223.)

The appellate court affirmed the trial court's denial of the motion. (*Henderson*, *supra*, 187 Cal.App.4th at p. 219.) It found the attorney "was responsible for supervising his paralegal's work and [was] responsible for her work product, including the failure to have the opposition filed on time." (*Id.* at p. 231.) The attorney's neglect was inexcusable. "[T]he errors involved matters peculiar to the legal profession.

---

[5] Specifically, *Teselle* found the trial court abused its discretion by "impos[ing] a terminating sanction for a mere violation of a procedural rule." (*Teselle v. McLoughlin*, *supra*, 173 Cal.App.4th at p. 162.) "[G]ranting a motion for summary judgment based on a procedural error by the opposing party is equivalent to a sanction terminating the action in favor of the other party." (*Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 97.) The same principal is analogous here, given that granting SATRA's motion to quash precluded plaintiff from seeking any relief from SATRA in California.

13

A reasonably prudent person would not have expected a paralegal, even a trusted one, to prepare an opposition to a summary judgment on her own and then, upon learning that the opposition would not be available for review before filing, simply wait to see if in fact the opposition is filed." (*Id*. at p. 232.)

The attorney's failure to supervise his employee in *Henderson* fell below the professional standard of care. He unreasonably entrusted his paralegal to prepare the entire opposition and then failed to properly supervise her. Here, there is no similar supervisory error. Plaintiff and her counsel were unable to file the opposition on July 1 because they mistakenly believed that Elliott & Ritch were still associated in this matter following Alderlaw's disassociation. It was this mistaken belief that caused the opposition to be filed only three days before the hearing. And, as discussed above, this belief was reasonable given the information available to plaintiff and her counsel.

### 2. Diligence

A party seeking relief under section 473 must act diligently after discovering the mistake. (*Eigner v. Worthington* (1997) 57 Cal.App.4th 188, 196.) Here, plaintiff acted diligently. She requested relief under section 473, subdivision (b), in her opposition papers, which she submitted the day after Ramey Law was able to associate into this matter as plaintiff's counsel. Moreover, plaintiff served SATRA with the opposition on July 1 and then contacted SATRA two days later to explain the issues she was having filing the documents.

SATRA argues that plaintiff was not diligent, in that she had over a month to prepare the opposition and, consequently, any corrective measures taken by her were too little, too late. But SATRA's argument focuses on the wrong timeframe. Diligence is measured from when the party discovers the mistake. (*Eigner v. Worthington*, *supra*, 57 Cal.App.4th at p. 196.) Once plaintiff and her counsel discovered Elliott & Ritch had been disassociated, they diligently sought relief.

14

### 3. *Prejudice*

Nothing in the record shows SATRA was meaningfully prejudiced by the late opposition.  It was not blindsided when the opposition was filed on July 9.  Plaintiff served SATRA with the opposition on July 1, and SATRA does not deny receiving it.  The opposition served on July 1 and the one filed on July 9 are nearly identical.  Further, on July 3, plaintiff told SATRA that she was having issues filing the opposition.  She requested that SATRA continue the hearing, which SATRA declined to do.  Thus, SATRA reasonably should have expected the opposition to be filed at some point.

In fact, SATRA filed its reply the same day plaintiff filed her opposition, indicating that it suffered no prejudice other than perhaps having to work late.  While SATRA insists "it was not afforded the time permitted under the Code of Civil Procedure to thoroughly review the opposition and prepare a reply," it provides no further elaboration.  SATRA does not identify any legal or factual research that it was prevented from conducting or fully exploring.  Nor does SATRA explain how it could have enhanced its reply if given more time to respond.  Further elaboration is particularly necessary since SATRA had several days to prepare its reply, as the opposition was served on July 1 and not filed until July 9.

Because plaintiff acted diligently to correct her mistaken belief and because SATRA suffered no meaningful prejudice, we find the trial court abused its discretion by failing to consider plaintiff's opposition.  Among other things, its analysis appears to have ignored or discounted plaintiff's mistaken belief that Elliott & Ritch were still associated as her counsel after Alderlaw withdrew.  And while we understand the time crunch facing the trial court given the lateness of the opposition, judicial policy strongly favors "'the adjudication of legal controversies [on] their merits.'"  (*Zamora*, *supra*, 28 Cal.4th at pp. 255-256.)  The trial court does not appear to have considered this policy in its ruling.  The trial court ultimately may have reached the same conclusion had it considered plaintiff's opposition.  But given the import of the motion, it erred by failing

15

to consider the opposition and accompanying evidence, causing the motion to quash to be perfunctorily granted.

## B. *Other Arguments*

Plaintiff also argues the trial court erred in denying her request for a continuance to conduct limited discovery.

"A trial court has the discretion to continue the hearing on a motion to quash service of summons for lack of personal jurisdiction to allow the plaintiff to conduct discovery on jurisdictional issues." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1173.) "A plaintiff is generally entitled to conduct discovery with regard to a jurisdictional issue before a court rules on a motion to quash." (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 911.) To prevail on a request "for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127.)

Plaintiff appears to have made two separate requests for a continuance to conduct jurisdictional discovery. The first was in her opposition to the motion to quash. The second was an oral motion at the hearing. Though the trial court denied plaintiff's oral motion, it did not consider the continuation request made in the opposition since it declined to consider the entire opposition. On remand, the trial court should consider plaintiff's written request to conduct jurisdictional discovery in the context of plaintiff's opposition and the evidence presented along with it. This includes the objections SATRA made to plaintiff's evidence, which the trial court did not previously address. (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347-1348 ["Rulings on evidentiary objections involve an exercise of discretion, and it is the trial court's responsibility to rule on the objections in the first instance"].) Thus, on remand, in addition to considering the merits of plaintiff's opposition, we also direct the trial court to

16

determine whether there is sufficient evidence to support a continuation of the hearing to allow for jurisdictional discovery.

SATRA argues that the trial court's order should also be affirmed because plaintiff's service of the summons and complaint was defective. In particular, SATRA maintains that plaintiff failed to file a proof of service showing SATRA had been served with these documents. The trial court did not address this issue. There is also some confusion as to whether plaintiff actually filed the proof of service. The proof of service is not in the appellate record, but plaintiff's opposition to the motion to quash states "[p]roof of service has been filed concurrently and the affidavit shows that service was effectuated under the Hague convention on [SATRA]." While SATRA's respondent's brief claims that the proof of service was never filed, plaintiff's reply brief states "the proof of service shows SATRA was properly served under the Hague Convention by personal service on an officer of [SATRA]."

Based on the record and the briefs before us, we cannot resolve whether or not the proof of service was actually filed and, if so, whether it contains any defects. Thus, we do not address this argument. (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 684 ["'An appellate court's review is limited to consideration of the matters contained in the appellate record'"].) We direct the trial court to consider this argument on remand if necessary.

Finally, we decline to address the parties' arguments on the merits of SATRA's motion. Our review would be premature. The trial court must first assess plaintiff's evidence, SATRA's objections to that evidence, and plaintiff's request to conduct jurisdictional discovery.

17

III

DISPOSITION

The trial court's order granting SATRA's motion to quash is reversed.  The matter is remanded to the trial court for further proceedings as directed within this opinion.  Plaintiff is entitled to her costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.